UNITED STATES, Appellee

v.

Johnny R. McCARTY, Master Sergeant
U.S. Air Force, Appellant.

No. 95–0851.
Crim.App. No. 30556.

U.S. Court of Appeals for
the Armed Forces.

Argued May 22, 1996.

Decided Sept. 30, 1996.

For Appellant: *Colonel Jay L. Cohen* (argued); *Captain Richard R. Desmond* (on brief).

For Appellee: *Colonel Jeffery T. Infelise* (argued); *Captain R. Scott Howard.*

*Opinion of the Court*

COX, Chief Judge:

Appellant was convicted of crimes arising out of sexual misconduct with his niece, a child under the age of 16.[1] We granted his petition to consider whether evidence introduced against him at trial was a confidential spousal communication and was, therefore, inadmissible as a privileged communication under Mil.R.Evid. 504(b), Manual for Courts–Martial, United States (1995 ed.). We hold that it was not.

The victim, appellant's niece, lived in appellant's home. She and a girlfriend were

---

1. Appellant was tried by a general court-martial at Malmstrom Air Force Base, Montana, consisting of officer and enlisted members. He was convicted, contrary to his pleas, of attempted carnal knowledge, sodomy with a child, and committing indecent acts, in violation of Articles 80, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 925, and 934, respectively. He was also convicted, pursuant to his pleas, of violating Montana law by giving an alcoholic beverage to a minor, in violation of Article 134. He received a bad-conduct discharge, confinement for 10 years, and reduction to Airman First Class. The convening authority approved the sentence. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

implicated in a theft of jewelry which had taken place in a residence on Malmstrom Air Force Base. At the request of the security police, appellant took his niece to the police station to be interviewed concerning the theft. En route, appellant asked his niece to lie about alcohol that he had furnished her and her girlfriend. The alcohol had been found in a closet in the girlfriend's room. He also asked her not to tell the police about his sexual activities with her. Although the victim eventually told the security police the truth about the alcohol found in her girlfriend's closet, she did not tell the police about appellant's sexual activities with her.

Following the interview, the Montana Department of Family Services became involved in the case and made a decision to remove the victim from appellant's home. The victim did not reveal appellant's sexual misconduct to the Montana authorities. The first time she told anyone about the sexual misconduct was January 19, when she revealed it to her mother, Janet Evans, during a telephone conversation.

On January 18, before the victim had told anyone about appellant's sexual misconduct with her, appellant's wife, Margaret McCarty, telephoned Janet Evans. Ms. Evans testified about statements Mrs. McCarty made to her during that conversation, as follows:

Yes. Margaret McCarty called me. She said that [H][the victim] had stolen some rings, and she had found them in her drawer, asked [H] about them, she didn't believe they [were] worth anything, so she took them and had them appraised. She found out they were worth a lot more money so she went to the lady that [H] had baby sat for, and the lady said, yes, those were her rings, and that she had pressed charges against her. She said that they had taken [H] downtown and

that [H] had accused Johnny McCarty of sexually molesting her, and that if I would please, please, just tell her and convince her not to press charges, that I could have my daughter back. Then she proceeded to tell me what a horrible, horrible child I had, how she didn't. . . .

At that point, defense counsel objected to the testimony as being beyond the ruling of the military judge. His objection was sustained. Following the witness' testimony, the military judge instructed the members that they could not consider the statements as evidence that H "was alleging she had been sexually abused." He continued:

You may believe or not believe, as you see fit, whether the statements were said by Mrs. McCarty. However, in determining whether the accused is guilty of the offenses involving H., you may not consider them as evidence to prove the truth of the matter asserted, which is H. alleging that she was sexually abused.

In resolving the issue presented in this case, we must first look at how it was raised at trial. During an *in camera* session pursuant to Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), trial counsel advised the military judge that he intended to call Ms. Evans for the purpose of introducing the foregoing statement. Defense counsel initially contended that the evidence was hearsay. At the prompting of the military judge, defense counsel further stated that he believed the statement also involved the spousal privilege. Importantly, although there was some discussion between the military judge and defense counsel concerning whether the statement was covered by the spousal privilege, no specific objection was made on that basis and no findings of fact were made by the military judge.[2]

---

2. Although we do not base our decision on waiver, this case shows exactly why Mil.R.Evid. 103, Manual for Courts–Martial, United States (1995 ed.), requires a timely objection, stating the specific ground of objection, and requires a record that the appellate court can review. It is difficult, if not impossible, to second-guess the intent of the trial defense counsel if he or she does not make the specific objection known to the military judge. Though not at issue here, a good argument can be made that the testimony of Ms. Evans concerning her conversation with Mrs. McCarty was "double hearsay" or perhaps even "triple hearsay," *i.e.*, Mrs. McCarty said that appellant said that H said, etc. However, it appears from the record that all the parties understood that the evidence was being offered as a "circumstance" surrounding the first revelation of the allegations, and nothing else.

At trial, the prosecution used the statement to argue that it was evidence of appellant's guilt. Trial counsel stated:

[I]f you believe Janet Evans, that that call was made, then you've got to ask yourselves, how would Margaret McCarty know when [H] [the victim] had never told anyone.... The only logical conclusion you can come to, members of the court, is that he panicked. He panicked and he told his wife because he thought the cops were going to be coming, only he didn't know that [H] was still keeping their little secret.

The Court of Criminal Appeals found:

While the appellant is certainly correct that trial counsel treated the appellant's wife's comments, as reported by Janet, as circumstantial evidence to show the appellant's guilty state of mind, we find no spousal "confidential communication" here to protect. Mil.R.Evid. 504(b)(1).

Unpub. op. at 4, 1995 WL 229134.

We agree with the court below. Mil.R.Evid. 504(b)(1) provides:

A person has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law.

■ There is nothing inherent in the testimony of Ms. Evans that reveals itself as a confidential marital communication. First, Mrs. McCarty denied making any such statement to Ms. Evans. Second, it can be fairly argued that the military judge and defense counsel were focused on the idea that the telephone conversation contained a hearsay declaration of the victim, not a spousal privileged communication. Assuming *arguendo* that the conversation could be so construed, the burden of establishing that there even was a marital communication is upon the party claiming it. *See* Mil.R.Evid. 504(b)(3). There is in fact no direct or circumstantial evidence that appellant ever had a privileged conversation with his wife. Under these circumstances, we conclude that appellant failed to make out a claim of a privileged communi-

cation. Lastly, there was no objection to the testimony on the grounds of spousal privilege, only conversation about it. Therefore, the military judge did not abuse his discretion, so his ruling allowing admission of the testimony was not clearly erroneous. Mil.R.Evid. 103; *see United States v. Rust,* 41 MJ 472, 479 (1995).

■ Once the military judge allowed the telephone conversation into evidence, the logical and legal inferences which could be drawn from that conversation, *i.e.,* that appellant had guilty knowledge of the sex abuse prior to the time the allegations were actually made, were fair game. The military judge instructed the members that they could not consider the statements for the truth of the assertion that the victim had in fact made allegations. No objection was made to his limiting instructions.

Accordingly, we find no error which materially prejudiced the substantial rights of appellant. *See* Art. 59(a), UCMJ, 10 USC § 859(a).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judges CRAWFORD and GIERKE concur.

SULLIVAN, Judge (concurring in the result):

Mil.R.Evid. 504(c)(2), Manual for Courts–Martial, United States, 1984, states:

(2) *Spousal incapacity and confidential communications.* There is no privilege under subdivisions (a) or (b):

(A) In proceedings in which one spouse is charged with a crime against the person or property of the other spouse or a child of either, or with a crime against the person or property of a third person committed in the course of committing a crime against the other spouse....

H is appellant's niece. She lived with appellant from age 2 to 12 because Janet Evans was unable to care for her. I would hold that H was a *"de facto"* child of appellant and his wife for purposes of this rule.

On the hearsay question noted by Senior Judge Everett and not granted for review by this Court, I find no error. The prosecution wanted to introduce evidence of the words of Mrs. McCarty to show her knowledge of or state of mind as to H's complaint against her husband. Since no complaint had been made by H at the time Mrs. McCarty said these words, the prosecution hoped the members would infer that her knowledge or state of mind was caused by her husband's telling her incorrectly that such a complaint was made or that such a complaint would be made. Such action by appellant was relevant as evidence of his consciousness of his guilt. The initial evidentiary proposition that Mrs. McCarty said certain words can be proved by testimony of someone hearing those words without violating the hearsay rule if such evidence is not offered to establish the truth of those words. *Cf.* Mil.R.Evid. 801(c) ("Hearsay is a statement ... offered in evidence to prove the truth of the matter asserted.").

EVERETT, Senior Judge (dissenting):

I agree with the majority's conclusion that the evidence in question was not an inadmissible confidential spousal communication. However, I cannot accept its premise that "[t]here is nothing inherent in the testimony of Ms. Evans that reveals itself as a confidential marital communication." 45 MJ at 336. *See* Mil.R.Evid. 504(b), Manual for Courts-Martial, United States (1995 ed.).

I

When trial counsel offered the testimony of Ms. Evans, defense counsel objected to admissibility of the challenged sentence on the ground, *inter alia,* that it was hearsay—that Ms. Evans would testify as to what Mrs. McCarty had told her. Mil.R.Evid. 802. In response, trial counsel asserted that it was not hearsay because the prosecution was not offering it to prove the truth of the matter asserted—that is, that appellant had sexually molested his niece. Mil.R.Evid. 801(c). Rather, in the words of the Court of Criminal Appeals, trial counsel contended that this "testimony supplied evidence of the *appel-*

*lant's guilty mind,* since he must have leaped to the conclusion that Hollie reported his abuse and *told that to his wife.*" Unpub. op. at 4 (emphasis added). As an aside, as the majority opinion points out, an argument might well be made under this view that Ms. Evans' testimony might be not only hearsay, but even double or triple hearsay. 45 MJ at 335 n. 2.

Now, in considering the granted issue whether admission of this testimony violated the spousal communication privilege, the majority—in agreement with the Government and with the court below—says no, implicitly, because the testimony does not necessarily represent that Mrs. McCarty learned of the purported allegation *from her husband.* In other words, the testimony itself does not necessarily indicate that appellant's wife had learned of the purported report from her husband; that she could have learned of it any number of ways; and that, accordingly, appellant had not carried his burden of asserting the privilege.

The circularity of the Government's trial and appellate positions, the latter of which has been subscribed to by the Court of Criminal Appeals and now by the majority of this Court, is obvious: How can one escape the spousal communication issue on the basis that there was no showing that the matter was learned by appellant's wife from her husband, when the only theory relied upon for admission of the testimony over a hearsay objection at trial necessarily was conditioned on appellant having told his wife about the matter?! Either appellant's wife learned of this from her husband (the necessary factual predicate for trial counsel's theory of admissibility), or she did not (the basis of the majority's avoidance of the spousal communication theory).

Nonetheless, I join the majority in rejecting appellant's claim of spousal privilege. Mil.R.Evid. 504(c)(2)(A) provides that there is no spousal communication privilege "[i]n proceedings in which one spouse is charged with a crime against the person or property of the other spouse or a child of either...." While H was not the offspring of appellant and his wife, the fact is that, as her uncle and

aunt, they had raised her as their custodial child for over 10 years, since she was 2 years old. I have no doubt that the purpose behind refusing the privilege to one accused of a crime against the couple's child would apply with equal force where the child was in the custody of the couple and for many years had been raised as their own.

## II

In my view, however, appellant's hearsay claim must be upheld. The relevance of Ms. Evans' testimony was to establish that Mrs. McCarty had made a statement to her from which it could be inferred that appellant had stated to his wife that he had abused the child. His statement to Mrs. McCarty would not be hearsay under Mil.R.Evid. 801(d). Arguably, his wife's declaration about the admission appellant made to her was not hearsay, either. *See* Mil.R.Evid. 801(d)(2). However, Ms. Evans' repetition of Mrs. McCarty's declaration clearly was hearsay and no exception applies to justify reception of this hearsay into evidence. Therefore, it should have been excluded as appellant contended at trial. In my view, reception of the evidence was prejudicial error. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a).