UNITED STATES

v.

**Airman Basic Lesly PHANPHIL,
United States Air Force.**

ACM 33484.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 10 Sept. 1998.

Decided 29 March 2001.

Appellate Counsel for Appellant: Colonel Theodore J. Fink, Colonel Jeanne M. Rueth, and Captain Michael J. Apol.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Captain Jonathan A. Beldon.

Before YOUNG, BURD, and ROBERTS, Appellate Military Judges.

## OPINION OF THE COURT

ROBERTS, Judge:

The appellant was convicted, contrary to his plea, of conspiracy to violate 18 U.S.C. § 922(a)(6), by knowingly making a false written statement likely or intended to deceive a licensed firearms dealer. Article 81, UCMJ, 10 U.S.C. § 881. He was convicted, pursuant to his pleas, of conspiracy to wrongfully engage in the business of shipping, transporting, or dealing firearms in foreign or interstate commerce, violation of a lawful general regulation by wrongfully using a government charge card for other than official government travel, and wrongfully making a false written statement to a licensed firearms dealer in connection with the purchase of firearms, in violation of Articles 81, 92, and 134, UCMJ, 10 U.S.C. §§ 881, 892, 934. The approved sentence includes a dishonorable discharge, confinement for 3 years, and forfeiture of all pay and allowances.

The appellant asserts four errors on appeal: (1) His guilty plea to wrongfully making a false written statement to a licensed firearms dealer in connection with the purchase of firearms offense was improvident; (2) The trial judge's instruction to the members regarding the element of materiality was plain error; (3) The court-martial's finding of guilty to the conspiracy offense is legally and factually insufficient; and (4) The approved sentence is inappropriately severe. We affirm.

## Background

The appellant began experiencing financial problems shortly after he arrived at Peterson Air Force Base (AFB), Colorado, and he mentioned this to his co-worker, Airman First Class (A1C) Mathieu. Airman First Class Mathieu told the appellant he knew someone who would pay $50 per gun if the appellant would purchase handguns for him. The appellant, A1C Mathieu, and the appellant's wife met with Specialist (later Private) Bros. At the initial meeting, Private Bros told the appellant why he wanted the appellant to buy guns for him—Private Bros was eligible to buy and had bought over 20 guns in the past, but was afraid that if he bought more he would draw attention to himself. As the appellant was not a resident of Colorado, Private Bros knew that the appellant would need his Permanent Change of Station (PCS) orders to Peterson AFB, in order to purchase firearms—it was illegal for the dealer to sell a firearm to a resident of another state. The appellant went home and got his PCS orders, and they all went to the sporting goods store to purchase the weapons. Private Bros identified five handguns he wanted, and then went outside with A1C Mathieu. The appellant filled out the paperwork, and A1C Mathieu came back in with the money to purchase the handguns. The appellant had to certify on one of the forms that he was the actual buyer of the handguns, even though he was purchasing them at the request of and for Private Bros.

The appellant and A1C Mathieu returned to work, so the appellant's wife, who had been present during all the activities at the sporting goods store, completed the transaction with a power of attorney. The appellant gave her the money and she paid for the handguns. The sporting goods store called the appellant a few days later to come in and sign the documents himself. At some point after the first purchase, A1C Mathieu told the appellant that Private Bros was sending the handguns to Haiti. The appellant, A1C Mathieu, and Private Bros are all Haitian. The appellant testified that he did not know the destination of the handguns before the first purchase. He and A1C Mathieu discussed another purchase for Private Bros,

and A1C Mathieu gave the appellant several hundred dollars to buy more weapons. Special Agents of the Air Force Office of Special Investigations (AFOSI) and the Bureau of Alcohol, Tobacco, and Firearms (BATF) then picked up the appellant, and he subsequently gave them a videotaped statement. He assisted with the BATF investigation of Private Bros by allowing his phone to be tapped and wearing a wire during his discussions with Private Bros. The appellant also made a second purchase of handguns with the BATF's authority.

## Providence of the Plea

■ It is a "well-established legal principle that a guilty plea generally precludes the post-trial litigation of factual questions pertaining to one's guilt." *United States v. Lloyd,* 46 M.J. 19, 24 (1997). Before this Court will reject an accused's guilty plea, we must find a substantial basis in law and fact for questioning the plea, not a mere possibility of conflict. *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991) (citing *United States v. Logan,* 47 C.M.R. 1, 3, 1973 WL 14641 (C.M.A.1973)). We review the trial judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Eberle,* 44 M.J. 374, 375 (1996).

■ The appellant pled guilty to, and was convicted of, a violation of 18 U.S.C. § 922(a)(6), as a crime not capital, under clause 3 of Article 134, UCMJ. The appellant's conviction is based on the Gun Control Act of 1968(GCA), which provides that it is unlawful for any person, in connection with the acquisition of any firearm from a licensed dealer, knowingly to make any false or fictitious oral or written statement intended or likely to deceive such dealer "with respect to *any fact material to the lawfulness of the sale* or other disposition of such firearm or ammunition *under the provisions of this chapter.*" 18 U.S.C. § 922(a)(6) (emphasis added).

In charging the appellant with violating 18 U.S.C. § 922(a)(6), the government did not allege that the appellant's statement was false on its face. Instead, the government asserted that the appellant made a false statement when he claimed on the BATF form that he was the true purchaser of the

firearms when, in fact, it was Private Bros. Citing two federal circuit courts of appeal cases, the appellant now asserts that his plea was improvident. He claims the trial judge failed to establish that the appellant's false statement was material to the lawfulness of the sale and that his statement was not material to the lawfulness of the sale. More specifically, the appellant claims that his false statement cannot be "material to the lawfulness of the sale" because Private Bros was eligible to purchase the firearms himself. *See United States v. Polk*, 118 F.3d 286 (5th Cir.1997); *United States v. Moore*, 84 F.3d 1567 (9th Cir.1996), *rev'd on other grounds*, 109 F.3d 1456 (9th Cir.1997) (en banc). Although *Moore* and *Polk* suggest such a result, the cases are not on point.

In *Moore*, the defendants were the mother (Moore) and a neighbor (Wiley) of a 14–year–old gang member who used a gun to kill a police officer. The boy had gone to a gun dealer but was asked to leave because he was underage. He asked his mother to buy him the gun, but she refused because she feared he might hurt someone and her name would be on the papers buying the gun. However, she pawned his "boom box" for him to obtain the funds so that he could buy a gun. The next day, the boy approached Wiley and convinced him to purchase the gun for him. Wiley lied to the gun dealer by telling him that he was the boy's grandfather and he would keep the gun for the boy until he was 21. After the dealer asked to speak to the boy's mother, Moore entered the shop, confirmed Wiley's story, and said, "Everything is fine with me." Wiley completed a BATF form claiming he was the true purchaser of the gun. At the time, it was legal in that state for parents to purchase weapons for their children.

The government prosecuted Wiley and Moore for making false statements in connection with the purchase of a firearm under the Gun Control Act of 1968 (GCA), 18 U.S.C. § 922, and conspiracy to violate that act. The Court held that the mother consented to the purchase of the firearm and, therefore, it was a legal sale. But, after an en banc rehearing, the Ninth Circuit Court of Appeals affirmed the accused's convictions.

The full court seemed to adopt the trial court's reasoning that Moore aided and abetted Wiley in making false statements that he was the true purchaser of the firearm, when, in fact, he was purchasing the firearm for the boy. As Wiley was not the boy's parent, buying the firearm for the boy was unlawful.

In *Polk*, the defendant was a car salesman who boasted of his desire to blow up federal buildings and kill federal employees across the country. A jury convicted him of several offenses, including aiding and abetting the making of a false statement to a federally licensed firearms dealer. The government alleged that Polk purchased weapons from a dealer through Davidson, a straw purchaser. After finding that the purpose of the GCA was to keep firearms out of the hands of those not legally entitled to possess them, the court found the evidence legally insufficient to sustain Polk's conviction. "[I]f the true purchaser can lawfully purchase a firearm directly, § 922(a)(6) liability (under a 'straw purchase' theory) does not attach." *Polk*, 118 F.3d at 295. But, the decision seems to hinge on the fact that there was no evidence that Polk knew how Davidson was getting the firearms. The court specifically found that Davidson was in the business of buying and selling firearms, sold some of them to Polk, and that "Polk's participation in the alleged crime consisted of nothing more than a request to purchase firearms." *Polk*, 118 F.3d at 296.

The appellant argues that *Moore* and *Polk* are based on a premise that in order for a fact to be "material to the lawfulness of the sale," the true purchaser must be ineligible to acquire the firearm, and Private Bros was not ineligible. Those persons ineligible to acquire a firearm are listed in 18 U.S.C. § 922(g). But, 18 U.S.C. § 922(a)(6) does not limit the scope of the materiality to § 922(g). Under 18 U.S.C. § 922(a)(6), it is unlawful to make a false statement that is "material to the lawfulness of the sale ... *under the provisions of this chapter*." (emphasis added). Thus, if a false statement causes an act to be unlawful under any provision of Title 18, Chapter 44, United States Code, it would be "material to the lawfulness of the sale." It is unlawful under the GCA

for any licensed gun dealer to sell or deliver any firearm "unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person." 18 U.S.C. § 922(b)(5). By providing false information to the dealer concerning the name, address, and residence of the true purchaser, the delivery of the firearm to the appellant was unlawful. Therefore, the appellant's false statements were material to the lawfulness of the sale. *United States v. Gudger*, 472 F.2d 566 (5th Cir.1972) (failure to provide correct address violated 18 U.S.C. § 922(a)(6)); *United States v. Crandall*, 453 F.2d 1216 (1st Cir.1972).

We note that the trial judge specifically asked the appellant about the materiality of the lawfulness of the sale. The trial judge defined a "fact material" as "an important fact, a significant fact." The appellant agreed that it would have been an important fact for the sporting goods store to know the actual purchaser of the weapons. He also agreed that information was a fact material or a very important fact that the sporting goods store, in their line of business, needed to know. He acknowledged that he understood that they probably would not have sold the handguns to him if they had thought they were selling them to Private Bros. Trial defense counsel agreed that the trial judge had accepted a provident plea.

There is a clear factual basis that the false statement was material to the lawfulness of the sale. The appellant conceded the factual issues concerning this offense at trial, and we will not engage in post-trial speculation as to these issues. *United States v. Grimm*, 51 M.J. 254, 257 (1999). There was no substantial basis in law or fact for the trial judge to reject the appellant's guilty plea.

### Erroneous Instruction

The appellant's next assigned error is that the trial judge committed plain error when he instructed the members that "[t]he materiality of the false statement is not a matter with which you are concerned, but rather is a question for the court to decide." Citing *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), the appellant asserts materiality was an element of

the offense and, therefore, was a matter for the court members to decide.

■ The appellant's failure to object to the instruction at trial or to request the trial judge give an additional instruction on materiality, forfeits appellate review of this issue, absent plain error. *United States v. Guthrie*, 53 M.J. 103, 106 (2000) (citing *United States v. Maxwell*, 45 M.J. 406, 426 (1996)); Rule for Courts-Martial 920(f). Plain error is error that is clear and obvious, and "materially prejudices the substantial rights of the [appellant]." *United States v. Powell*, 49 M.J. 460, 464 (1998). While we "are not constrained from taking notice of otherwise forfeited errors, ... [we] may not reverse unless the error 'materially prejudices the substantial rights of the accused.'" *Id.* Under the facts of this case, even if the trial judge erred, it did not materially prejudice the appellant's substantial rights. He pled guilty to making a false statement material to the lawfulness of the sale and, at his request, the trial judge so informed the court members. Thus, that element of the conspiracy offense had already been established as a matter of law.

■ We find that the trial judge did not err. In *Gaudin*, the trial judge gave a similar instruction to the jury in the case of an accused charged with making a materially false statement in violation of 18 U.S.C. § 1001. That statute provides it is unlawful to "knowingly and willfully" falsify a "material fact" in any matter within the jurisdiction of any department or agency of the United States. The Supreme Court concluded that conviction of an offense under 18 U.S.C. § 1001, therefore, requires a false statement that is " 'material' to the Government inquiry." *Gaudin*, 515 U.S. at 509, 115 S.Ct. 2310. The resolution of whether a statement is "material" involves several questions: (1) What statement was made? (2) What decision was the agency trying to make? and ultimately (3) Whether the statement was relevant to the decision. *See Gaudin*, 515 U.S. at 512, 115 S.Ct. 2310. The Court held that whether a statement is " 'material' to the Government inquiry" is a mixed question of fact and law—and that such questions are

normally left to the jury to decide. *Gaudin,* 515 U.S. at 512–15, 115 S.Ct. 2310.

The issue is different in the appellant's case. The issue is whether the appellant's false statements were material to the lawfulness of the sale under the provisions of Title 18, Chapter 44, of the United States Code. Clearly, that is a matter of law for the judge to determine. *United States v. Klais,* 68 F.3d 1282 (11th Cir.1995), *cert. denied,* 519 U.S. 829, 117 S.Ct. 94, 136 L.Ed.2d 50 (1996) (denying petition to review whether the materiality element in federal offenses may be withdrawn from the jury and treated as a question of law). To hold otherwise, would require court members to be instructed, not only on the elements of the offense, but on the numerous ways a sale might be unlawful under Title 18, Chapter 44.

### Legal and Factual Sufficiency

The appellant's next assigned error is that his conviction of conspiring to knowingly make a false written statement likely or intended to deceive a licensed firearms dealer, is legally and factually insufficient because no conspiracy existed. Specifically, he alleges the prosecution failed to prove that an agreement existed between the named co-conspirators to make the false written statement. We disagree.

The agreement in a conspiracy need not be in any particular form or manifested in any formal words. *United States v. Cobb,* 45 M.J. 82, 84 (1996). In fact, the meeting of the minds "can be silent" or simply a "mutual understanding among the parties." *Id.* (citing *United States v. Barnes,* 38 M.J. 72, 75 (C.M.A.1993)). It is sufficient if the minds of the parties arrive at a common understanding to accomplish the object of the conspiracy, and this may be shown by the conduct of the parties. *United States v. Layne,* 29 M.J. 48, 51 (C.M.A.1989). To sustain a finding of guilty to a charge of conspiracy, the agreement need only be implied. *Cobb,* 45 M.J. at 85.

Private Bros testified that the purchase could not have taken place if the appellant had honestly completed the forms, even though he may not have specifically told the appellant to falsify the forms. Private Bros knew what documentation was necessary for the transaction, as he had the appellant use his PCS orders. He also knew how the appellant had to answer questions on the forms in order to purchase the handguns. The appellant admitted that he was not purchasing the handguns for himself, and that he was not providing the money for the purchases.

We find that the evidence is legally sufficient for a rational factfinder to find beyond a reasonable doubt that appellant knowingly conspired to make a false written statement that was likely or intended to deceive a licensed firearms dealer with respect to a fact material to the lawfulness of the sale of firearms. We are also convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *United States v. Ladell,* 30 M.J. 672, 673 (A.F.C.M.R.1990). The appellant conspired with his wife, A1C Mathieu, and Private Bros to commit this offense. The parties understood that the appellant could not purchase the handguns for Private Bros if he honestly answered the questions on the required forms. Furthermore, there was a common understanding of the answers the appellant had to provide on the forms in order to purchase the handguns, and their conduct in effectuating the purchase of the handguns also reflected that common understanding. Under these circumstances, a conspiracy existed, and the fact that the conspirators did not discuss the specific answers the appellant provided on the forms is immaterial.

### Sentence Severity

The appellant claims his sentence is unduly severe when compared with that received by A1C Mathieu. There is no evidence before this Court of A1C Mathieu's sentence; however, the government concedes in its brief that he was sentenced to confinement for 90 days with no punitive discharge.

We are not required to compare the appellant's sentence with that of other accused "except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases."

*United States v. Lacy,* 50 M.J. 286, 288 (1999) (quoting *United States v. Ballard,* 20 M.J. 282, 283 (C.M.A.1985)). We will act to ameliorate a sentence when it is highly disparate with a sentence imposed in the same jurisdiction and "there are no good and cogent reasons for the difference in punishment." *United States v. Thorn,* 36 M.J. 955, 959 (A.F.C.M.R.1993). Although in this case the sentences are disparate, there are good and cogent reasons for the difference. According to the briefs, A1C Mathieu was convicted of two conspiracies while the accused, in addition to the two conspiracies, was convicted of actually falsifying the BATF form which enabled him to purchase the firearms for Private Bros and misusing his government credit card. His misuse of the government credit card was an ongoing problem— he had been disciplined for similar misuse of the card in the past, apparently without effect. We reviewed the appellant's sentence on an individual basis taking into consideration both the nature and seriousness of the offenses involved and the appellant's character, and find that it is not unduly harsh. *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982).

### Conclusion

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.