VOLLENWEIDER, Judge:
A special court-martial composed of officer members convicted the appellant, contrary to his pleas, of indecent assault and indecent language, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The appellant was sentenced to confinement for six months, forfeiture of $737.00 pay per month for six months, reduction to pay grade E-l, and a bad-conduct discharge. The convening authority approved the sentence as adjudged. As a matter of clemency, the convening authority deferred adjudged and automatic forfeitures prior to taking his action, then waived automatic forfeitures for six months and suspended adjudged forfeitures for the same period.
We have considered the record of trial, the appellant’s brief asserting three assignments of error,[1] the Government’s answer, the appellant’s reply, and the outstanding oral argument by both counsel.[2] We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. See Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).
Background
The appellant was convicted of using indecent language and committing an indecent assault upon the female attendant of the phone center at Camp Lejeune, North Carolina, on 28 April 2002. The victim contacted the police that same day to report the offenses. The following day, the appellant submitted to questioning by Special Agent Le-Sane of the Naval Criminal Investigative Service (NCIS), and ultimately signed a sworn statement regarding the incident. In that statement, the appellant admitted using indecent language, rubbing his hand against the victim’s breast, hugging her, and positioning himself with his groin against her buttocks while he may have been in an aroused state.
Trial was held on 18 June 2002 (arraignment) and 16-18 October 2002. The appellant did not testify at trial. The appellant was represented at trial by civilian defense counsel, Richard McNeil. Mr. McNeil is an experienced attorney, a retired Marine Corps judge advocate with twenty-five years of military law experience. Record at 48, 303. He is also a former judge. Id. at 377. In his opening statement, Mr. McNeil addressed the statement given by the appellant to Special Agent LeSane. He described the inter *635 view process wherein the appellant initially talked to the agent about being in the phone center to make a call. Then he described the agent pulling out a videotape and telling the appellant that the incident was on tape. The remainder of Mr. McNeil’s opening statement was essentially an argument that once the appellant was shown the tape, he told the truth, that his subsequent sworn statement[3] was a truthful recitation of what actually took place, and that what took place was simply the result of bad judgment, not a crime. Id. at 137-41.
In closing, Mr. McNeil returned to the theme he began in his opening:
But when you place that videotape on the table, Sergeant Tovar realized that he had to be a little more forthright. He had to be more candid about what actually transpired in there.
... We believe that statement is accurate and it’s correct. That he basically stated out the facts of what transpired. And if you read his statement, and you believe it, you must acquit him.
Id. at 303. Mr. McNeil also argued:
[Trial counsel] asked the special agent, How reliable is this technique? And he said, Very reliable. And then there’s another question, and the special agent said that he believed it worked here. So what, again, does that tell you? That tells you it’s a reliable technique. Plus, common sense tells us it’s a reliable technique.
Id. at 304 (emphasis added). Mr. McNeil continued his theme of the case in his closing:
The special agent signed it after Sergeant Tovar signed it. That implies to most of us that were in this courtroom, that the special agent believed that that was an honest assessment on behalf of Sergeant Tovar. Because if he didn’t, the special agent, after 11 of (sic) 12 years of experience, and almost 1000 interrogations, would have said, we have to ask you more questions. We have to go a little further. But they did not.
Id. at 304 (emphasis added). Mr. McNeil continued this theme throughout his closing argument.
The appellant’s statement to NCIS was admitted into evidence, without objection, prior to opening statements. The appellant himself never testified at trial on the merits. Special Agent LeSane testified on direct concerning his interrogation of the appellant. He described the appellant’s demeanor and the interrogation itself, essentially following Mr. McNeil’s opening statement outline. After describing how the appellant gave his first version of events, the special agent stated the following:
A. ... And at that time, I determined deception.
Q. Why did you think that?
A. Because I—during my experience as a law enforcement officers [sic], 11 years, an innocent person would give you the whole account of it. He wouldn’t just leave out a couple of important issues like, Did (sic) you touch her breasts, or, Did (sic) you touch her butt?
Record at 220-21. No objection was made by the appellant.
Special Agent LeSane explained how he then pulled out a videotape (which was actually blank) and told the appellant that he had the incident on tape. The appellant’s demeanor changed; he asked for a smoke break, which was granted. The appellant came back in and said: ‘Well, let me tell you what happened.” He then proceeded to tell Special Agent LeSane a more complete version of events that now included his grabbing the victim’s breast and buttocks. Id. at 221. Again, there was no objection to this testimony. The appellant’s fuller version of events was put into a typed statement that he swore to and signed. Id. at 222.
On cross-examination, Mr. McNeil returned to the deception theme:
Q. And prior to [pulling out the videotape], you were concerned about some of the information he’d given you. Correct?
A. Yes, sir.
Q. You thought he was being deceptive?
A. Yes, sir.
*636 Q. Or maybe not being totally candid. I mean, he admitted he was there with the young lady. Correct?
A. Yes, he admitted he was there.
Id. at 235.
Mr. McNeil’s final question to Special Agent LeSane was:
Q. And at the end of this process, you were satisfied with this statement. Correct?
A. Yes, sir, for the time.
Id. at 238.
“Human Lie Detector” Testimony
In the vernacular of the military justice system,[4] “human lie detector” testimony is “[A]n opinion as to whether the person was truthful in making a specific statement regarding a fact at issue in the case.” United States v. Kasper, 58 M.J. 314, 315 (C.A.A.F.2003)(citing United States v. Whitney, 55 M.J. 413, 415 (C.A.A.F.2001)). The Court of Appeals for the Armed Forces has listed several reasons why “human lie detector” testimony is impermissible:
1. Determination of truthfulness exceeds the scope of a witness’ expertise, because the expert lacks specialized knowledge of whether the declarant was telling the truth.
2. Such an opinion exceeds the limits on character evidence set forth in Military Rule of Evidence 608, Manual for Courts-Martial, United States (2002 ed.), because it offers an opinion as to the declarant’s truthfulness on a specific occasion, rather than knowledge of the declar-ant’s reputation for truthfulness in the community.
3. Such testimony places a stamp of truthfulness on the declarant’s story in a manner that usurps the jury’s exclusive function to weigh evidence and determine credibility.
See Kasper, 58 M.J. at 315. In an early case, the Court of Military Appeals noted, “the factfinders are perfectly capable of observing and assessing a witness’ credibility.” United States v. Cameron, 21 M.J. 59, 63 (C.M.A.1985). This truism is obviously less useful where, as here, the witness does not testify in court.
The issue of “human lie detector” testimony arises most frequently in cases involving expert opinions regarding the truthfulness of victim statements (either in or out of court)—particularly the statements of infant victims or rape victims—elicited by the Government to prove a case against a defendant.[5] In these cases, the improper opinions as to credibility were most often used to bolster the testimony of the alleged victim. This is not such a case. This case falls among those that involve opinions by investigators on the veracity of statements made by an accused.[6]
We learn from both lines of eases that admission of credibility evidence of the type at issue in this case does not automatically *637 result in a finding of prejudicial error leading to reversal of a conviction. Rather, each case must be decided on its own facts, and in each case a harm analysis performed. Where, as here, there was no objection to the testimony at trial, we must review the allegation of error under the plain-error standard. United States v. Birdsall, 47 M.J. 404, 409-10 (C.A.A.F.1998). “To overcome waiver, appellant must convince us that (1) there was error; (2) that it was plain or obvious; and (3) that the error materially prejudiced a substantial right. We will reverse for plain error only if the error had ‘an unfair, prejudicial impact’ on the findings or sentence.” Schlamer, 52 M.J. at 85-86 (quoting United States v. Powell, 49 M.J. 460, 463 (C.A.A.F.1998)).[7] Article 59(a), UCMJ, limits military appellate courts from reversing a finding or sentence for legal error unless the error materially prejudices an appellant’s substantial rights. Powell, 49 M.J. at 465. A reviewing court must put the complained of testimony in context to determine if the witness’ opinions amount to prejudicial plain error. See United States v. Eggen, 51 M.J. 159, 161 (C.A.A.F.1999). No prejudice will be found if any error was induced or invited by the defense. Id. at 162.
The first question we must address is whether the NCIS agent’s testimony constituted error. The appellant has the burden of persuading us that there was plain error. Powell, 49 M.J. at 464-65. He has not done so in this case. The central tenet of the appellant’s case at trial was that the final statement he gave to Special Agent LeSane was complete and credible. That was Mr. McNeil’s theory of the case as reflected in his opening statement and closing argument, as well as his own questioning of Special Agent LeSane. None of the agent’s comments, now objected to for the first time on appeal, implied otherwise. The appellant, neither at trial nor on appeal, disputed the obvious fact that his original statement to Special Agent LeSane was not entirely correct. Deception was obvious on its face from the appellant’s changed story. The appellant may not claim error on appeal where the trial proceeded exactly in accordance with his own attorney’s theory of the case. Cf. United States v. Cacy, 43 M.J. 214, 218 (C.A.A.F.1995); United States v. Jones, 60 M.J. 964, 970 (A.F.Ct.Crim.App.2005), rev. denied, 62 M.J. 438 (C.A.A.F.2006).
Likewise, even if it was error to admit Special Agent LeSane’s comments regarding deception, such error is far from plain in light of the appellant’s strategy at trial. The appellant’s approach at trial was to show that the facts, as revealed in the final statement signed by the appellant, were true, and evidence of consensual behavior, not criminal acts. He wanted the members to believe his sworn statement to NCIS, unlike the accused in Kasper, who wished the members to disbelieve her pretrial statement.
Further, no prejudice occurred. The appellant does not address prejudice in his briefs. To determine if error is harmless, the court will assess what effect the error had or may have had on the factfinder’s decision. United States v. Cobb, 45 M.J. 82, 86 (C.A.A.F.1996). Where inconsistencies and contradictions in the appellant’s statement were obvious and would have raised questions concerning the credibility of the statement even in the absence of the witness’ improper opinion testimony, there is no prejudice. See id. “If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a very specific command of Congress.” Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)(footnote omitted).
As was the case in Cobb, the appellant’s veracity problems were apparent from the face of his statements, and he was not prejudiced. See Cobb, 45 M.J. at 87; see also United States v. Terry, 61 M.J. 721 (N.M.Ct.Crim.App.2005), rev. denied, 2006 CAAF LEXIS 158 (C.A.A.F. May 19, 2006); United States v. Simmons, 54 M.J. 883 (N.M.Ct.Crim.App.2001). The appellant’s deception was obvious from the differences between the two statements he gave to Special Agent *638 LeSane.[8] Any trier of fact would reach the same conclusion, even without the agent’s comments, particularly in light of Mr. McNeil’s questioning of Special Agent Le-Sane and Mr. McNeil’s opening statement and closing argument. The appellant’s second story was obviously different than his first story.
We find no error based on Special Agent LeSane’s testimony, and, in any event, no prejudice to the appellant. This assignment of error is without merit.
Factual Sufficiency
The appellant alleges that the facts in his case do not support his conviction. We disagree. Military courts of criminal appeals must determine both the factual and legal sufficiency of the evidence presented at trial. United States v. Turner, 25 M.J. 324, 325 (C.M.A.1987); see Art. 66, UCMJ. The test for factual sufficiency is whether, after weighing all of the evidence in the record of trial and making allowances for the lack of personal observation, this court is convinced of the appellant’s guilt beyond a reasonable doubt. Turner, 25 M.J. at 325. The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. Id. (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The term “reasonable doubt” does not mean the evidence must be free of conflict. United States v. Reed, 51 M. J. 559, 562 (N.M.Ct.Crim.App.1999), aff'd, 54 M.J. 37 (C.A.A.F.2000). The factfinder may “believe one part of a witness’ testimony and disbelieve another.” United States v. Harris, 8 M.J. 52, 59 (C.M.A.1979).
In the instant ease, the real question is whether there was sufficient evidence to corroborate the appellant’s confession to Special Agent LeSane.[9] After carefully reviewing the record, we are convinced that a reasonable factfinder could find the appellant guilty of indecent assault and indecent language based on all the evidence presented at trial. While not free of conflict, the members found the testimony of Lance Corporal Sanchez and the complaining witness to be credible, as do we. It is not mandatory that the victim of an indecent assault scream or fight a Sergeant of Marines who is attacking her, in order to be deemed credible, as suggested by the appellant. We also do not find it surprising that a victim waited until her attacker departed before calling the police.
We find the evidence in support of the appellant’s conviction to be legally sufficient. Moreover, on the basis of the entire record, we are convinced of the appellant’s guilt beyond a reasonable doubt. We find no merit in this assignment of error.
Unreasonable Multiplication of Charges
The appellant alleges that charging him with indecent language, along with indecent assault, constituted an unreasonable multiplication of charges. We disagree. To determine whether there has been an unreasonable multiplication of charges, we consider five factors: (1) did the appellant object at trial; (2) are the charges aimed at distinctly separate criminal acts; (3) do the charges misrepresent or exaggerate the appellant’s criminality; (4) do the charges unreasonably increase the appellant’s punitive exposure; and (5) is there any evidence of prosecutorial *639 overreaching or abuse in the drafting of the charges and specifications? United States v. Quiroz, 57 M.J. 583, 585-86 (N.M.Ct.Crim.App.2002)(en banc), aff'd, 58 M.J. 183 (C.A.A.F.2003)(summary disposition).
In deciding issues of unreasonable multiplication of charges, we also consider Rule for Courts-Martial 307(c)(4), Manual for Courts-Martial, United States (2002 ed.), Discussion, which provides the following guidance: “What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person.” In considering all of these factors, we grant appropriate relief if we find “ ‘the “piling on” of charges so extreme or unreasonable as to necessitate the invocation of our Article 66(e), UCMJ, authority [to affirm only such findings of guilty and so much of the sentence as we find correct in law and fact and determine, on the basis of the entire record, should be approved], ’ ” Quiroz, 57 M.J. at 585 (quoting United States v. Quiroz, 53 M.J. 600, 607 (N.M.Ct.Crim.App.2000)); see also United States v. Foster, 40 M.J. 140, 144 n. 4 (C.M.A.1994).
Applying the non-exclusive Quiroz factors and the guidance provided by R.C.M. 307, we conclude that:
1. The appellant did not object at trial to being charged with both offenses;
2. The charges are aimed at distinctly separate criminal acts;
3. The charges did not misrepresent or exaggerate the appellant’s criminality;
4. The charges did not unreasonably increase the appellant’s punitive exposure at his special court-martial; and,
5. Charging the appellant with both offenses was not overreaching or abuse in the drafting of the charges and specifications at the time of charging.
We find that charging the appellant with indecent assault and indecent language did not constitute an unreasonable multiplication of charges.
Conclusion
Accordingly, the findings of guilty and the sentence, as approved by the convening authority, are affirmed.
Senior Judge CARVER and Judge GEISER concur.

. I. HUMAN LIE DETECTOR TESTIMONY IS PER SE PROHIBITED AND THE MILITARY JUDGE MUST INSTRUCT THE MEMBERS AS TO ITS ERROR. THE MILITARY JUDGE ALLOWED SPECIAL AGENT LESANE TO ACT AS A HUMAN LIE DETECTOR AND THEN FAILED TO PROVIDE ANY CURATIVE INSTRUCTIONS TO THE MEMBERS. WAS THIS ERROR?
II. A REVIEW FOR FACTUAL SUFFICIENCY INVOLVES A FRESH, IMPARTIAL LOOK AT THE EVIDENCE. WITH THE GOVERNMENT'S PRIMARY CASE CONSISTING OF AN ALLEGED THIEF WHO HAD A REPUTATION FOR LYING, DOES THE EVIDENCE FACTUALLY SUPPORT APPELLANT’S CONVICTION?
III. GOVERNMENT ALLEGED THAT APPELLANT BOTH ACTED AND SPOKE INDECENTLY DURING THE SAME COURSE OF CONDUCT. DO SEPARATE CHARGES FOR EACH ACTION CONSTITUTE AN UNREASONABLE MULTIPLICATION OF CHARGES?

. Oral argument was held at the U.S. Naval Academy as part of this court’s outreach program. We thank the midshipmen and the judge advocate instructor staff for their warm hospitality during our visit.

. Prosecution Exhibit 3.

. This phrase is rarely used in federal court opinions outside of the military justice system.

. See United States v. Armstrong, 53 M.J. 76 (C.A.A.F.2000)(conviction reversed); United States v. Robbins, 52 M.J. 455 (C.A.A.F.2000)(no prejudicial error, conviction affirmed); United States v. Harris, 51 M.J. 191 (C.A.A.F.1999)(conviction affirmed); United States v. Eggen, 51 M.J. 159 (C.A.A.F.1999)(no prejudicial plain error, error invited by the defense, conviction affirmed); United States v. Birdsall, 47 M.J. 404 (C.A.A.F.1998)(conviction reversed); United States v. Cacy, 43 M.J. 214 (C.A.A.F.1995)(no prejudicial error, conviction affirmed); United States v. Marrie, 43 M.J. 35 (C.A.A.F.1995)(error harmless, conviction affirmed); United States v. Arruza, 26 M.J. 234 (C.M.A.1988)(error harmless, conviction affirmed); United States v. Petersen, 24 M.J. 283 (C.M.A.1987)(conviction reversed); Cameron, 21 M.J. at 59 (conviction reversed); United States v. Terry, 61 M.J. 721 (N.M.Ct.Crim.App.2005)(no plain error conviction affirmed), rev. denied, 2006 CAAF LEXIS 58 (C.A.A.F. May 19, 2006). Cf. United States v. Diaz, 59 M.J. 79 (C.A.A.F.2003)(conviction reversed where expert testified as to the ultimate issue of guilt of the accused).

. See Kasper, 58 M.J. at 314 (conviction reversed); United States v. Schlamer, 52 M.J. 80 (C.A.A.F.1999)(no plain error; conviction affirmed); United States v. Cobb, 45 M.J. 82 (C.A.A.F.1996)(no prejudice, conviction affirmed); United States v. Simmons, 54 M.J. 883 (N.M.Ct.Crim.App.2001)(no prejudicial error, conviction affirmed); United States v. Jones, 60 M.J. 964 (A.F.Ct.Crim.App.2005)(no prejudicial error, conviction affirmed), rev. denied, 62 M.J. 438 (C.A.A.F.2006).

. Mr. McNeil was the civilian defense counsel at trial in Schlamer as well as the case sub judice.

. As the old question goes: "Were you lying then or are you lying now?”

. Mil. R. Evid. 304(g) provides:
An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth. Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence.
The quantum of evidence needed to corroborate a confession, however, is not great.
The independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. The independent evidence need raise only an inference of the truth of the essential facts admitted. The amount and type of evidence introduced as corroboration is a factor to be considered by the trier of fact in determining the weight, if any, to be given to the admission or confession.
Mil. R. Evid. 304(g)(1).