UNITED STATES, Appellee

v.

William L. CACY, Staff Sergeant
U.S. Army, Appellant.

No. 94–1070.
CMR No. 9101201.

U.S. Court of Appeals for
the Armed Forces.

Argued June 1, 1995.

Decided Sept. 29, 1995.

For Appellant: *Captain James W. Friend* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel John T. Rucker, Major Fran W. Walterhouse, Captain Beth G. Pacella* (on brief).

For Appellee: *Major Lyle D. Jentzer* (argued); *Colonel John M. Smith* (on brief).

*Opinion of the Court*

COX, Judge:

1. Appellant was tried by a general court-martial, military judge sitting alone, at Fort Polk, Louisiana. Contrary to his pleas, he was convicted of sodomy with a child under 16 years of age and of taking indecent liberties with a child under 16 years of age, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. The military judge sentenced him to a bad-conduct discharge, confinement for 90 days, and reduction to the lowest enlisted grade. The convening authority approved the adjudged sentence.

2. Upon initial review, the Court of Military Review[1] held appellant had been denied the opportunity to submit clemency matters to the convening authority pursuant to RCM 1105 and 1106, Manual for Courts–Martial, United States, 1984. The court then set aside the action of the convening authority and ordered a new recommendation and action pursuant to Article 60, UCMJ, 10 USC 860 (1983). Unpub. op. at 2 (Feb. 25, 1993). The new convening authority, in accordance with his staff judge advocate's recommendation and after reviewing appellant's clemency matters, approved the adjudged sentence; whereupon, the case was resubmitted to the Court of Military Review, which then affirmed the findings and sentence in an unpublished opinion (Feb. 15, 1994).

3. On November 18, 1994, this Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ALLOWING EXPERT TESTIMONY INTO THE BELIEVABILITY OR CREDIBILITY OF THE ALLEGED VICTIM.

We hold the military judge's ruling did not substantially prejudice appellant's rights.

FACTS

4. Appellant was accused of engaging in sexual activities with his 6–year–old daughter. During appellant's court-martial, the prosecution presented testimony from Special Agents Kurtz and Pikalek, who commented on appellant's confession and subsequent retraction, respectively; from the victim; the victim's mother; a social worker, Ms. Holly Croyle; and a sexual abuse counselor, Ms. Florence Dyer. Ms. Croyle performed the initial interview of the victim after she received a referral alleging the victim had been sexually abused. Ms. Croyle testified regarding the interview process for abuse victims and further testified about the victim's statements to her. During questioning by the assistant trial counsel (ATC), the following colloquy ensued:

> Q  Would you describe ... [the victim's] demeanor when she was telling you this?
>
> A  Her effect [sic] is that she was very nervous. She was appropriately embar-

---

1. *See* 41 MJ 213, 229 n.* (1994).

rassed when asked to identify certain things. She was very shy. She would look down. It seemed very consistent with other children I have interviewed who have alleged sexual abuse. She didn't appear she was rehearsed, or just stating things matter of factly. It seemed to be very difficult for her to discuss. She spoke of being mad at dad.

At this point, defense counsel objected to any reference that the victim was truthful, but the military judge overruled, stating: "The concern of the defense is well taken. However, I agree with the Government that that has not been approached at this point...."

5. Later on, the same witness testified as follows:

Q Did [the victim] have any difficulty in narrating things in a factual way?

A I don't understand.

Q Did you ask her to tell you factual statements?

A Did I decipher if she was telling me the truth or lies? I don't understand.

Q No. Well, no—

DC: Objection. One, he's trying to lead the witness and two, I'm going to object if that's the basis—information that he is trying to elicit.

MJ: Your objection is, of course, well taken, and I don't think that's what the Government was attempting to ask. Perhaps the Government can—

ATC: Let me see if can rephrase it a little more artfully, Your Honor.

### FURTHER QUESTIONS BY THE PROSECUTION:

Q Did you impress on her the need to tell you facts or to be truthful with you?

A Yes, I did.

Q And was that important to your—Is that an important part of your protocol?

A Yes. Yes, as far as if we get a statement that is—If the child isn't telling us the truth, of course, we wouldn't want to do [sic] ask the things of the family that we would normally do.

Q As a result of what [the victim] told you, did you determine that there was a need for further referral?

A Yes.

DC: Your Honor, we are going to object to the leading nature of the question. He is on direct and if he—if I don't object, I feel he's going to continue to lead the witness.

### FURTHER QUESTIONS BY THE PROSECUTION:

Q Did you make a further referral:

A Yes, I did.

6. The Government's second expert witness, Ms. Florence Dyer, a sexual abuse counselor, had also interviewed the victim and provided the following testimony:

Q[ATC] When you talked with [the victim], did you impress on her the need to relate factual or truthful information to you?

A Yes, I did. She initially did not want to talk about it, so what I did was pulled out some art supplies and we just did some drawings and she drew on my blackboard, and while she was doing that I talked to her, and as I talked to her, she gave me more and more information about what was going on, what had happened to her.

And later:

Q When you have a child or a person in therapy for an extended period of time, do you attempt to determine whether anything they've told you has been fabricated or coached?

A If I have a question about that—I've never had a child that I felt had been coached. There are, certainly, in the research there are a number of things to look at as to cues that the child has been coached.

Q What kind of cues are they?

A If a child repeats the story with no change of reflection of tone, no shows in motion [sic], if they use words that aren't consistent with the child's language, they sound more like grown up words rather than a child's words, there was that, you know. In [the victim's] case, there was a lot of anxiety. She kept looking at me to

see how I was reacting to what she was telling me. She initially didn't want to say anything, so I didn't get any sense that she was coached.

Q You didn't see any of those factors which are present when they're coached?

A No, I didn't.

ATC: I'll pass the witness.

7. Appellant argues that the statements set out above either directly or inferentially comment on the victim's credibility and, as such, should not have been admitted by the military judge.

## ANALYSIS

■ 8. This Court has consistently held that, once foundational prerequisites have been met, an expert witness is permitted to testify about an opinion if this would be helpful to the factfinders in determining matters in issue. *See* Mil.R.Evid. 702, Manual, *supra;*[2] *United States v. Meeks*, 35 MJ 64 (CMA 1992); *United States v. Partyka*, 30 MJ 242 (CMA 1990); *United States v. Benedict*, 27 MJ 253 (CMA 1988); *United States v. Snipes*, 18 MJ 172 (CMA 1984). However, an expert may not testify regarding the credibility or believability of a victim, or "opine as to the guilt or innocence of an accused." *United States v. Suarez*, 35 MJ 374, 376 (CMA 1992). As then-Chief Judge Everett stated when writing in *United States v. Cameron*, 21 MJ 59 (CMA 1985):

> To allow an "expert" to offer his opinion on the resolution of a credibility dispute goes too far, and it makes no difference whether the opinion is express or follows inferentially from the expert's diagnosis of a psychological condition suffered by the witness whose credibility is at issue. The court members must decide whether a witness is telling the truth. Expert insights into human nature are permissible, but lie detector evidence—whether human or me-

chanical—is not.[3] Otherwise, trials could degenerate into a battle of experts expressing opinions on the veracity of various witnesses. *See State v. Taylor*, 663 S.W.2d [235] at 241 [ (Mo.1984) ].

21 MJ at 64–65, *quoting United States v. Tomlinson*, 20 MJ 897, 902 (ACMR 1985). This is consistent with our precedents and the decisions of the Federal Courts of Appeals. *United States v. Arruza*, 26 MJ 234 (CMA 1988), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); *see also United States v. Azure*, 801 F.2d 336 (8th Cir.1986).

■ 9. In child sexual-abuse cases, we have acknowledged that there is a sufficient body of "specialized knowledge" as to the typical behavior patterns of victims to permit certain conclusions to be drawn by experts regarding such patterns. *United States v. Benedict*, 27 MJ at 259; *United States v. Tolppa*, 25 MJ 352, 354 (CMA 1987); *United States v. Nelson*, 25 MJ 110, 113 (CMA 1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988); *United States v. Snipes*, 18 MJ 172, 179 (CMA 1984). An expert may testify as to what symptoms are found among children who have suffered sexual abuse and whether the child-witness has exhibited these symptoms; discuss patterns of consistency in the stories of victims and compare those patterns with patterns in the victim's story; and testify about a child's ability to separate truth from fantasy. *United States v. Harrison*, 31 MJ 330, 332 (CMA 1990); *United States v. Tolppa*, 25 MJ at 354; *United States v. Azure*, 801 F.2d at 340; *see also United States v. Suarez*, 32 MJ 767, 769 (ACMR 1991), *aff'd*, 35 MJ 374, 376 (CMA 1992).

■ 10. When using the testimony of expert witnesses in the area of child sexual abuse, trial practitioners "must walk a fine

---

**2.** This Rule of Evidence provides:

    If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

**3.** Regarding the latest on admissibility of polygraph examinations, *see United States v. Williams*, 43 MJ 348 (1995); *United States v. Gipson*, 24 MJ 246 (CMA 1987); and Mil.R.Evid. 707, Manual for Courts–Martial, United States, 1984 (Change 5).

line." *United States v. Marrie*, 39 MJ 993, 999 (AFCMR), *aff'd*, 43 MJ 35 (1995). This type of evidence inevitably bears on the credibility of the victim by comparing her behavior to an identified class of abuse victims. *See United States v. Rath*, 27 MJ 600, 610 (ACMR 1988) ("Considering the balance of [the expert's] testimony admitted at trial, we perceive little distinction between testimony that the symptoms of a child alleged to be a victim of child-sexual-abuse are consistent with the symptomology of sexually abused children in general and testimony that the child's symptoms are inconsistent with symptomology of a false claim of sexual abuse"), *pet. denied*, 29 MJ 284 (1989). As in the present case, questioning of the expert frequently delves into his or her ability to discern whether a victim appears rehearsed or coached, or is feigning, and this is usually admissible. *See United States v. Brenton*, 24 MJ 562, 565 (AFCMR 1987) (Court did not agree that admission of expert's opinion that the victim did not appear to have been rehearsed constituted error), *pet. denied*, 25 MJ 393 (1987); *United States v. Rath, supra.*

11. Looking to the facts of our case, two expert witnesses testified. The first, Ms. Croyle, testified that the victim's behavior was consistent with behavior patterns of sexual abuse victims and, further, that the victim did not appear rehearsed. Both comments, as pointed out above, are generally admissible. The same witness then testified, over defense objection, that she explained to the victim the importance of being truthful with her; and, based on the victim's responses, Ms. Croyle testified she recommended further treatment. This, in essence, is an affirmation by Ms. Croyle that she in fact believed the victim. We do not allow an expert to opine that a victim is telling the truth and thus "usurp the exclusive function of the jury to weigh the evidence and determine credibility." *United States . v. Arruza*, 26 MJ at 237, *quoting United States v. Samara*, 643 F.2d 701, 705 (10th Cir.), *cert. denied*, 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981). The second witness, Ms. Dacy, testified in the same vein as Ms. Croyle, except without defense objection.

12. While admission of expert testimony relating to believability of a witness' testimony or statement can, in some instances, result in prejudicial error requiring corrective action, reversal is not required if the court's error can be determined to be harmless. *United States v. Cameron, supra; United States v. Azure*, 801 F.2d at 341; *United States v. Arruza*, 21 MJ at 623–24. The defense's theory in this case was to show that the victim's mother, motivated by custody problems with appellant, had coached the victim to provide certain responses implicating appellant, thus opening the door for the prosecution to go into this matter. Furthermore, the trial was by military judge alone. We stated in *United States v. Deland*, 22 MJ 70, *cert. denied*, 479 U.S. 856, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986):

> [W]e assume ... that the judge did not in any way rely on any inference he might have drawn as to ... [the expert]'s opinion of ... [the victim]'s credibility.

*Id.* at 74; *see also United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir.1993) ["The prejudicial impact of erroneously admitted evidence in a bench trial is presumed to be substantially less than it might have been in a jury trial. Moreover, ' "a judge, sitting as a trier of fact, is presumed to have rested his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible." ' " (Citations omitted.) ], *cert. denied*, —— U.S. ——, 114 S.Ct. 2150, 128 L.Ed.2d 876 (1994).

13. We conclude that appellant was not prejudiced by the improper line of questioning. Art. 59(a), UCMJ, 10 USC § 859(a).

The decision of the United States Army Court of Military Review on further review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.