**UNITED STATES**

v.

**Staff Sergeant Terry McCOLLUM, United States Air Force.**

**ACM 34324.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 28 July 2000.

Decided 10 April 2002.

Appellate Counsel for Appellant: Major Jeffrey A. Vires (argued), Colonel James R. Wise, and Lieutenant Colonel Timothy W. Murphy.

Appellate Counsel for the United States: Major John D. Douglas (argued), Colonel Anthony P. Dattilo, Lieutenant Colonel Lance B. Sigmon, and Major Jennifer R. Rider.

Before YOUNG, BRESLIN, and ROBERTS, Appellate Military Judges.

## OPINION OF THE COURT

BRESLIN, Senior Judge:

A military judge sitting as a general court-martial tried the appellant. The court-martial convicted the appellant, contrary to his pleas, of raping a child under the age of 16 years on divers occasions, committing indecent acts upon the body of a child on divers occasions, and having carnal knowledge of a child over the age of 12 years on divers occasions, in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920, 934. A sentence to a dishonorable discharge, confinement for 18 years, and reduction to E–1 was adjudged and approved. We heard oral argument on this case at the George Mason University School of Law in Arlington, Virginia, on 7 March 2002.

The appellant alleges the military judge erred by "requiring the absence of the appellant during the testimony of an alleged victim, in violation of his right to confront his accuser," and by admitting certain statements from the appellant to his wife, which he contends were privileged marital communications. Finding no error, we affirm.

*Right to Confront Witnesses*

In May 1999, the appellant met SK over the Internet. He traveled to Connecticut to meet her, and they begin a relationship. Eventually, she and her four children traveled by bus to North Carolina to live with him in his on-base quarters. Because of the large number of people in the house, one of the children, CS, age 11, had to sleep on the couch, and two boys had to sleep in a reclining chair. One night SK awakened, went into the living room, and found the appellant, naked and sexually aroused, poised over CS. During one of many subsequent arguments, the appellant admitted sexually assaulting CS on another occasion. SK notified authorities, took her children back to Connecticut, and obtained counseling services for CS.

In a preliminary session, the prosecution moved to allow a child witness, CS, to testify from a remote location, in accordance with Mil. R. Evid. 611(d) and Rule for Courts–Martial (R.C.M.) 914A. The defense counsel opposed the request.

The military judge conducted an evidentiary hearing on this motion. The military judge recognized Ms. Joan Prior, a licensed clinical social worker with a master's degree in social work, as an expert witness. Ms. Prior counseled CS for several months, and diagnosed CS as suffering from post-traumatic stress disorder (PTSD) and depression. Ms. Prior related that CS feared the appellant, and believed that if she told about the abuse the appellant would beat her. Ms. Prior opined that requiring CS to testify in the presence of the appellant would make her "function in a more disorganized way," that she "would become highly agitated," so that "her level of functioning would change overall." Ms. Prior acknowledged that it would be stressful for CS to testify in the courtroom setting even if the appellant were absent. Asked if the appellant's presence would make the experience more emotionally harmful, Ms. Prior replied, "Extremely so, yes." She testified that if CS saw the appellant it would trigger symptoms, which was common for patients with PTSD. Later, Ms. Prior testified that she has observed occasions when the PTSD symptoms were "triggered," and CS completely shut down.

Ms. Prior also informed the court that having CS testify in the appellant's presence would adversely affect her therapeutic process. She was of the opinion that it was "extremely likely" that CS would suffer a setback in her treatment, perhaps by a having a reoccurrence of nightmares, or by becoming withdrawn.

Ms. Prior indicated that CS said she wanted to testify in the appellant's presence. Ms. Prior opined that CS had been "parentified," meaning that CS wanted to please adults and agreed to testify in the appellant's presence in order to do so. Nonetheless, Ms. Prior was convinced that it would be harmful to CS to testify in the appellant's presence.

The military judge entered findings of fact and conclusions of law on the record. She considered both Mil. R. Evid. 611(d) and the decision of the Supreme Court in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The military judge ruled that CS was "unable to testify in open court because of the presence of the accused and her fear of the accused which causes her emotional trauma," and granted the prosecution's motion allowing CS to testify from a remote location by two-way closed circuit television.

Immediately before CS testified, the appellant elected to withdraw from the courtroom. Under Mil. R. Evid. 611(d)(4), this required CS to testify in the courtroom. After making an appropriate inquiry, the military judge approved the appellant's request. During CS's testimony, the appellant was in another room with one of his two defense counsel. The appellant was able to see and hear CS live on the closed circuit television, and to communicate with his counsel in the courtroom on a private telephone line in accordance with R.C.M. 804(c)(2). The appellant now asserts the military judge "committed prejudicial error by requiring the absence of the appellant" during CS's testimony, denying him the right to confront the witness.

The Confrontation Clause in the Sixth Amendment to the Constitution of the United States assures a person facing trial on criminal charges the right "to be confronted with the witnesses against him." The Confronta-

tion Clause "reflects a preference for face-to-face confrontation at trial." *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). This preference, however, "must occasionally give way to considerations of public policy and the necessities of the case." *Maryland v. Craig,* 497 U.S. 836, 849, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (quoting *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895)). In *Craig,* the Supreme Court held that the Confrontation Clause was satisfied in cases involving child victims where: 1) There was a case-specific finding that the presence of the accused during the child's testimony would result in trauma which would impair the child's ability to communicate; 2) The impact on the child would be more than de minimis; 3) The child testified under oath; 4) The child was subject to cross-examination; and 5) The child was able to be observed by the judge, jury, and defendant as the child testified. *Id.* at 855–56.

Following the decision in *Craig,* Congress enacted the Comprehensive Crime Control Act of 1990. Pub.L. No. 101–647, 104 Stat. 4789. Included in that legislation was a provision, codified at 18 U.S.C. § 3509, authorizing federal courts to take testimony by two-way closed-circuit television in cases involving children as witnesses. 18 U.S.C. § 3509 formed the basis for the new Mil. R. Evid. 611(d), effective 1 November 1999. *Manual for Courts–Martial, United States,* A25–25 (2000 ed.).

Mil. R. Evid. 611(d) provides in pertinent part:

(3) Remote live testimony will be used only where the military judge makes a finding on the record that a child is unable to testify in open court in the presence of the accused, for any of the following reasons:

(A) The child is unable to testify because of fear;

(B) There is substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying;

(C) The child suffers from a mental disease or other infirmity; or

(D) Conduct by an accused or defense counsel causes the child to be unable to continue testifying.

(4) Remote live testimony of a child shall not be utilized where the accused elects to absent himself from the courtroom in accordance with R.C.M. 804(c).

■■■ A military judge's finding of necessity, i.e., that there is a likelihood that the child will suffer at least moderate emotional and mental harm if required to testify in the accused's presence, is a question of fact which "will not be reversed unless it is clearly erroneous or unsupported by the record." *United States v. Anderson,* 51 M.J. 145, 150 (1999) (quoting *United States v. Longstreath,* 45 M.J. 366, 373 (1996)); *United States v. Carrier,* 9 F.3d 867, 870–71 (10th Cir.1993). We review a military judge's conclusions of law de novo. *United States v. Daulton,* 45 M.J. 212, 219 (1996); *United States v. Ayala,* 43 M.J. 296, 298 (1995).

■■■ The appellant argues that CS's fear of testifying came from the courtroom setting, and not from fear of the appellant. He claims this does not meet the constitutional requirements of *Maryland v. Craig,* even though it meets the terms of Mil. R. Evid. 611(d)(3)(A).* The evidence adduced on the motion plainly shows that the child was afraid of both the courtroom setting and the appellant, and that the presence of the appellant increased her fear "extremely." The military judge, applying the criteria of both Mil. R. Evid. 611(d)(3) and *Craig,* properly found that the child was unable to testify because of her fear of the appellant. There is ample evidence to support the military judge's findings in this regard.

The appellant also argues that the evidence was insufficient to show that CS's

---

* Questions about whether Mil. R. Evid. 611(d)(3) passes constitutional muster under *Craig* are intriguing. *See United States v. Garcia,* 7 F.3d 885 (9 Cir.1993) (holding 18 U.S.C. § 3509 is constitutional, if read in conjunction with *Craig*); Major Edward J. O'Brien, USA, *Are Courts Martial* *Ready for Prime Time? Televised Testimony and Other Developments in the Law of Confrontation,* 2000 Army Law. 63 (May 2000). However, it is unnecessary for this Court to resolve any issue of the constitutionality of Mil. R. Evid. 611(d)(3) in this case. Instead, our issues are factual.

trauma would be sufficiently severe (more than de minimis) to justify denying the appellant the right to confront the witness. Ms. Prior testified about two different kinds of impact: her ability to provide testimony and the adverse effect on her treatment for PTSD. The expert indicated that exposure to the appellant could cause CS to "shut down." Indeed, Ms. Prior had witnessed that reaction in the past. Also, it could have caused the victim to suffer a reoccurrence of nightmares or to become withdrawn. Considering all the testimony, we find the evidence sufficient to show that the adverse impact on CS would be more than de minimis. The military judge did not err in concluding that this evidence was sufficient to conclude the child was unable to testify.

In a related argument, the appellant maintains the military judge's finding that CS would be "traumatized" is insufficient to determine whether the military judge found her level of distress was more than de minimis, as required by *Craig*. However, in delivering her findings, the military judge properly noted that the "trauma must be more than de minimis." It is clear the military judge applied the correct legal standard when making her ruling.

The military judge made a case-specific finding on the record that the presence of the accused during CS's testimony would result in trauma sufficient to render her unable to testify. The child testified under oath, and was subjected to cross-examination by opposing counsel, in the presence of the court-martial, and in the view of the appellant and his counsel. We conclude the appellant was not denied his right to confront the witness.

### Spousal Communications

The appellant alleges the military judge erred in admitting into evidence statements by the appellant to his wife, indicating that he did not ejaculate inside the victim, MW, and that he wanted to tell his family what he had done to MW. The appellant contends the military judge erred, because the statements were privileged spousal communications. We find no error.

The appellant was married in 1991. In 1996, his wife's 14 year-old sister, MW, came to stay with them for a month. MW was "mildly mentally retarded." She attended school in a special education class and could not take care of herself. Mrs. McCollum cared for MW during her visit.

At about 0200 or 0300 one night, Mrs. McCollum went into the living room and found the appellant watching television in his underwear, with MW lying on the floor in her nightgown with her panties exposed, rubbing her abdomen. The next day, Mrs. McCollum asked MW what happened. Eventually MW reported the appellant had sex with her. Mrs. McCollum confronted the appellant in the bathroom, as he was getting out of the shower. At first he denied it, but then admitted it, saying, "Yeah, okay." She asked him why he did it, and he replied he did not know.

Mrs. McCollum discussed the matter with the appellant at other times in the days following the incident. The conversations occurred in and around the house, with no other persons immediately present. Mrs. McCollum expressed her concern that MW may be pregnant, and indicated her intent to obtain an abortion for MW if necessary. Sometime during these discussions, the appellant told Mrs. McCollum he did not ejaculate inside MW. Mrs. McCollum took MW to a clinic for a pregnancy test. She did not report the appellant's statement.

The appellant went to Saudi Arabia on temporary duty for about three months. Ms. McCollum testified that, when he returned, he said he had been reading his Bible, and that he was trying to "get his life together" and "live right." She testified that he said he wanted to tell their families what he had done to MW. Mrs. McCollum did not want him to tell her family, but thought he had told his mother. The appellant's mother testified that the appellant never actually made the disclosure. In 1996, Mrs. McCollum divorced the appellant.

Trial defense counsel moved to exclude the appellant's statements based upon spousal privilege. After hearing evidence, the military judge excluded the appellant's first statements in the bathroom. The military judge admitted the two later statements. She found the privilege did not apply to the

appellant's declaration that he had not ejaculated in MW, concluding that he said it intending it to be communicated to medical authorities to determine whether MW was pregnant. The military judge also found no privilege regarding the appellant's statement that he wanted to tell his family what he had done, because the statement was made with the intent that it be disclosed to third persons.

The appellant now alleges the military judge erred in admitting the statement concerning whether the appellant ejaculated in MW, because it was a privileged communication, protected under Mil. R. Evid. 504. He argues the statement was never intended to be conveyed to medical authorities—rather it was intended to allay his wife's concerns about whether MW could be pregnant. During oral argument, the appellate defense counsel argued that the latter statement was also privileged, because the appellant did not consent to allowing his wife to tell others what he did to MW.

It is an ancient maxim of our law that the "public ... has a right to every man's evidence." *Jaffee v. Redmond*, 518 U.S. 1, 9, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996); *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950). Broadly speaking, the purpose of most evidentiary and procedural rules is to enhance the presentation of "the truth, the whole truth, and nothing but the truth" at trial. 1 John W. Strong, *McCormick on Evidence* § 72 (5th ed.1999). By contrast, the rules regarding privileges are not designed to facilitate the fact-finding process. "[R]ather than facilitating the illumination of truth, they shut out the light." *Id.* For that reason, the Supreme Court has held that privileges must be narrowly construed because they impede the search for truth. *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Singleton*, 260 F.3d 1295, 1301 (11th Cir.2001). Exceptions from the general rule disfavoring testimonial privileges may be justified, however, by a "public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Jaffee*, 518 U.S. at 9, 116 S.Ct. 1923 (citing *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)) (quoting *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)). The rationale traditionally advanced for these privileges is that public policy requires the encouragement of the communications without which certain relationships cannot be effective. Strong, *supra.*

Mil. R. Evid. 504 sets out the spousal privilege applicable to trials by courts-martial. The rule provides that a person has the privilege to prevent another from disclosing "any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law." Mil. R. Evid. 504(b)(1). The rule defines a confidential communication as one made privately to a spouse, and "not intended to be disclosed to third persons other than those reasonably necessary for transmission of the communication." Mil. R. Evid. 504(b)(2). Our superior court has summarized this rule as requiring three conditions to be met for a privilege to be upheld: (1) a communication; (2) intended to be confidential; (3) between married persons not separated at the time of the communication. *United States v. McElhaney*, 54 M.J. 120, 131 (2000); *United States v. Peterson*, 48 M.J. 81, 82 (1998). The burden of establishing that a communication is privileged is on the party claiming the privilege. Mil. R. Evid. 504(b)(3); *United States v. McCarty*, 45 M.J. 334, 336 (1996).

Of course, such a privilege may be waived. Mil. R. Evid. 510(a) provides that a person may waive this privilege if he or she "voluntarily discloses or consents to disclosure of any significant part of the ... communication under such circumstances that it would be inappropriate to allow the claim of privilege."

■ We review a military judge's decision to admit evidence for an abuse of discretion. *McElhaney*, 54 M.J. at 132. The question of whether a conversation is privileged is a mixed question of law and fact. *United States v. Napoleon*, 46 M.J. 279, 284 (1997); *United States v. Coleman*, 26 M.J. 407, 409 (C.M.A.1988). "To reverse for 'an abuse of discretion involves far more than a difference in ... opinion.... The challenged action

must ... be found to be "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous" in order to be invalidated on appeal.'" *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987) (citations omitted). *Accord McElhaney*, 54 M.J. at 132; *United States v. Miller*, 46 M.J. 63, 65 (1997).

█ Before resolving this issue, it is helpful to recall the procedural context. The appellant, as the proponent of the privilege, had the burden of persuading the military judge that the communications were privileged. *McCarty*, 45 M.J. at 336. A proponent does not meet his or her burden of proving the existence of the privilege by a preponderance of the evidence where the evidence is equivocal or uncertain. In this case the appellant's wife, over a period of several days, indicated her concern about whether MW was pregnant, and her desire to terminate the pregnancy if necessary. During this time, the appellant told his wife that he did not ejaculate inside MW. From this, one could infer that the appellant provided this information intending it to be relayed to the health care providers. On the other hand, one might infer that he made the comment hoping to dissuade his wife from taking the matter to an outside agency. The military judge—having heard the testimony and observed the witnesses—concluded the appellant made the statement intending it to be transmitted to medical authorities. In light of this finding, the military judge obviously concluded that the appellant did not meet his burden of proving the existence of the privilege.

As noted above, we review the military judge's findings under a "clearly erroneous" standard. Because there was some evidence that would support this inference, we do not find that the military judge's decision was arbitrary, fanciful, or clearly erroneous.

█ We turn to the second statement at issue. The appellant's wife also testified that, upon his return from Saudi Arabia, the appellant told her that he had been reading his Bible, that he wanted to get his life straight, and that he intended to tell their families what he had done to MW. The testimony was uncontradicted. The military judge determined that the statement was not privileged because it was not intended to be kept private. The appellant now challenges the military judge's decision to admit the appellant's statement.

We conclude that the military judge did not err in finding the appellant's statement that he wanted to tell their families what he had done to MW constituted consent to disclosure of the information under Mil. R. Evid. 510(a). The fact that he made the statement to his wife does not alter the clear import of the statement—he no longer desired that the subject be kept privately. Indeed, the consent was not limited to the final statement itself, but related to all the facts previously discussed concerning the appellant's conduct with MW. While the appellant never actually disclosed this information to the respective families, that is not controlling. It is clear the appellant no longer intended that the matter be private.

The approved findings and the sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). Accordingly, the approved findings and sentence are

AFFIRMED.