# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Heinz D. BRIDGES
### Storekeeper Second Class (E-5), U.S. Coast Guard

## CGCMG 0169

## Docket No. 1147

## 6 March 2003

General Court-Martial convened by Commander, Eighth Coast Guard District.  Tried at New Orleans, Louisiana on 23 – 27 October 2000.

| | |
|---|---|
| Judge: | CAPT Michael J. Devine, USCG |
| Trial Counsel: | CDR William D. Baumgartner, USCG |
| Assistant Trial Counsel: | LTJG Curtis E. Borland, USCG |
| Detailed Defense Counsel: | LT Laurin N. Eskridge, JAGC, USNR |
| Assistant Defense Counsel: | LT Glenn Watkins, JAGC, USNR |
| Appellate Defense Counsel: | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | LT Sandra J. Miracle, USCG |

## BEFORE
## PANEL TEN
## BAUM, BRUCE, AND CAHILL
Appellate Judges

CAHILL, Judge:

Appellant was tried by a general court-martial composed of officer members.  Contrary to his pleas, he was convicted of two specifications of indecent acts with a child in violation of Article 134, Uniform Code of Military Justice (UCMJ); one specification of rape of a child under age 12 in violation of Article 120, UCMJ; and one specification of forcible sodomy upon a child under age 12 in violation of Article 125, UCMJ.  Appellant was sentenced to reduction to pay grade E-1, forfeiture of all pay and allowances, confinement for 22 years, and a dishonorable discharge.  The convening authority disapproved and dismissed one specification of indecent acts and the sole specification and charge of forcible sodomy, and approved the findings of guilt for the charge and one specification of indecent acts with a child and the charge and one specification of rape of a child under 12.  The convening authority approved the reduction,

forfeitures, and punitive discharge as adjudged, but approved confinement for only 20 years.

Before this Court, Appellant has assigned six errors:

I.  The convening authority erred by attempting to reassess the sentence after dismissing two findings of guilty;

II. The military judge erred by admitting testimony, over defense objection, by the Appellant's ex-wife that Appellant had erections while playing with children;

III. The military judge erred in failing to grant a mistrial after trial counsel repeatedly argued that the testimony of expert witnesses supported that the victim was telling the truth;

IV.  The evidence is factually insufficient to support the charges and specifications;

V.  The military judge erred in refusing to allow the defense to *voir dire* the members concerning an e-mail sent from the Staff Judge Advocate shortly before Appellant's trial which was widely distributed throughout the Eighth Coast Guard District and sent to at least one member, about another Coast Guard case involving child molestation, urging that Coast Guard commands be "cautio[us]" [sic]; and

VI.  The military judge erred in holding that the defense failed to reasonably raise the issue of unlawful command influence with regard to an e-mail sent from the Staff Judge Advocate shortly before Appellant's trial which was widely distributed throughout the Eighth Coast Guard District and sent to at least one member, about another Coast Guard case involving child molestation, urging that Coast Guard commands be "cautio[us]" [sic].

The last four assignments of error were brought on behalf of Appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).  Oral argument was held on July 2, 2002.  We reject Appellant's fourth assignment of error (factual insufficiency) without further discussion, as we find the evidence proves beyond a reasonable doubt that Appellant committed the offenses approved by the convening authority.  Also, we will combine our discussion of the fifth and sixth assignments of error because trial defense counsel sought to raise the issue of unlawful command influence after findings were announced.

Background

Appellant, at the time of trial, had served almost 17 years of active duty in the Coast Guard, including almost five years of sea duty.  He had no prior disciplinary actions.  In 1984, he was awarded a Coast Guard Achievement Medal for his involvement in a search and rescue case, and received positive entries in his personnel record on at least two occasions.  However, he was also placed on performance probation or counseled for poor performance on several occasions during his career.

Appellant began a relationship with Rosemary Barnhart in Utah in 1990 during a break in his active service.  Ms. Barnhart had two young children, a daughter born in 1986 and a younger

son. When Appellant reenlisted in 1991 and was assigned to USCGC HAMILTON in California, Ms. Barnhart and her children moved to California. Appellant also met Rosemary's sister, Lynnette, who had two daughters. Lynnette began caring for Rosemary's children in 1993 when Rosemary was unable to care for them due to problems with drug abuse. When Lynnette informed Appellant that she faced eviction for over-occupancy of her apartment, Appellant offered to marry her. She accepted his offer, and they were married in October 1993. At the time of their marriage, Lynnette was pregnant and Appellant was not the father.

In December 1993, two months after they married, Appellant informed Lynnette that he intended to divorce her. Although they continued to live together, Appellant initiated divorce proceedings in May 1994. During the summer of 1994, Appellant transferred to Coast Guard Group Humboldt Bay in Northern California. The "family," including Rosemary Barnhart's two children, moved with him, and they were placed in government-furnished quarters in Ferndale, California.

In the fall of 1994, Petty Officer H. moved into government-furnished quarters in Ferndale, along with his wife Susan, eight year-old daughter N., and five year-old son. Appellant was a neighbor, and Rosemary's daughter became friends with N. N. frequently visited Appellant's house, and remained overnight on several occasions. Appellant occasionally "bathed" N. and Rosemary's daughter, with his hand wrapped in a washcloth.

Lynnette and the children moved out of Appellant's home when the final divorce decree was issued in January 1995. At approximately the same time, Petty Officer H. and Susan also separated. Appellant cared for Susan and her two children after Susan underwent major surgery, and they shared his apartment in McKinleyville, California. Appellant and Susan married on 24 December 1995, and they moved back to government-furnished quarters in Ferndale. In March 1996, Petty Officer H. married Lynnette, Appellant's ex-wife. Appellant transferred to New Orleans during the summer of 1998, and he, Susan, N., and her son moved to Slidell, Louisiana.

During the summer of 1999, N. visited her father at his new duty station. When he asked her if Appellant had "touched [her] in a weird way," she ran from the room crying. She then told her father that she had been sexually abused by Appellant on several occasions, and her father notified local authorities. Although it is not clear in the record where and when Appellant was charged and confined by civil authorities, the convening authority ordered in his action that Appellant receive 66 days credit against his sentence for civilian confinement on charges related to those for which he was tried by court-martial. He was not prosecuted by civil authorities.

Initial military charges were preferred against Appellant on 17 May 2000 and received by the summary court-martial convening authority the same day. He was initially charged with rape of a child under 12 on or about August 1998 at or near Slidell, Louisiana and forcible sodomy of a child under 12 on divers occasions from June 1995 through June 1998.[1]

---

[1] Prior to trial, the convening authority withdrew one specification of rape of a child under 12 on divers occasions from October 1994 through June 1998 at or near Ferndale, California and a charge and its sole specification of indecent acts with a child on divers occasions from October 1994 through March 1995 at or near Ferndale, California by fondling N. and placing his body upon her with the intent to satisfy his sexual desires.

An additional charge with two specifications of indecent acts with a child was preferred against Appellant on 14 August 2000. The first specification alleged that, on divers occasions from August 1995 to June 1998 at or near McKinleyville "and/or" Ferndale, California, Appellant fondled N., placed his body upon her, and forced her to hold his penis. The second specification alleged that, on divers occasions from August 1995 to June 1998 at or near McKinleyville "and/or" Ferndale, California, Appellant fondled N.'s breasts and rubbed her vaginal area with a washcloth-wrapped finger.[2] Both specifications alleged that the Appellant acted with the intent to gratify his sexual desires.

At trial, N. testified that, while they lived in California, Appellant entered her bedroom while she was sleeping, removed her underwear, laid on top of her, and rubbed against her while he was not wearing pants. She also said that on another occasion, he had her place her hand on his "private." On another occasion, he removed her underwear and "started licking my private with his tongue." She testified that, after the family moved to Louisiana, Appellant entered her bedroom several times one night. He removed the blankets from her bed and removed her underwear. She awoke when she felt a sharp pain with Appellant lying on top of her and "his private in mine." Evidence was presented at trial that a physician examined N. and found injuries consistent with prior sexual abuse. Appellant also continued to occasionally "bathe" her until 1998, when she was approximately 12 years old.

Additional relevant facts will be discussed below in connection with specific assignments of error.

I. Convening Authority's Reassessment of the Sentence.

In her post-trial recommendation under Rules for Courts-Martial (RCM) 1106, the Staff Judge Advocate (SJA) recommended that the convening authority disapprove the findings of guilt to one specification of indecent acts and the charge and specification of forcible sodomy due to concerns that the evidence failed to establish that the acts took place within the applicable statutes of limitations. However, the SJA recommended that the convening authority approve the sentence as adjudged due to the severity of the remaining charges and the nature of Appellant's course of sexual abuse and relationship to the victim. The SJA also noted that evidence of abuse outside the period of the statute of limitations was admissible as evidence in aggravation.

In a response to the SJA's recommendations, trial defense counsel agreed with the SJA's recommendation to disapprove the guilty findings, but disagreed with the SJA's recommendation to approve the sentence as adjudged. Trial defense counsel suggested that the members would have handed down a sentence of less than 10 years, even after considering the additional offenses as evidence in aggravation. Separately, in her clemency submissions under RCM 1105, trial defense counsel asked the convening authority to reduce confinement to eight years.

In an addendum to her RCM 1106 recommendation, the SJA reiterated her belief that the members would have assessed the same sentence even if one indecent acts specification and the

---

[2] At trial, Appellant was found guilty by exceptions and substitutions of "fondling [N.'s] breasts and rubbing her vaginal area with a wash-cloth wrapped finger or fingers."

forcible sodomy charge were not before them for sentencing. However, she also informed the convening authority that, if he could determine that Appellant's "sentence would have been at least of a certain magnitude, you may reassess and approve a sentence of that magnitude or one that is less severe." She suggested, "in an abundance of caution," that the convening authority approve 17 years of confinement.

The convening authority followed the SJA's recommendations on findings. He disapproved the guilty findings and dismissed one specification of indecent acts and the charge of forcible sodomy and its sole specification. He then reassessed the sentence and approved confinement for 20 years.

A convening authority may take action to cure any errors that may have arisen at trial, and, when doing so, must follow the same rules applicable to an appellate court to ensure that an accused is "placed in the same position he would have occupied if an error had not occurred." *United States v. Reed*, 33 M.J. 98, 99-100 (C.M.A. 1991). In *Reed*, which also involved a convening authority's action disapproving guilty findings of sexual abuse on statute of limitations grounds, the convening authority reduced confinement from seven years to five years. The Court of Military Appeals set aside the convening authority's action and remanded the case for further proceedings because it determined that the staff judge advocate provided inadequate advice on how the convening authority should reassess the sentence. *Reed*, 33 M.J. at 100. In the present case, the SJA's recommendation stated the correct analysis – the convening authority may approve a sentence of the magnitude of that which would have been adjudged absent error, or any lesser sentence. *See United States v. Sales*, 22 M.J. 305, 307-308 (C.M.A. 1986).

The real question is whether the convening authority, or this court, can accurately determine the sentence which the members would have adjudged for only those charges and specifications approved by the convening authority.[3] The government correctly notes that Appellant's maximum potential punishment at trial (dishonorable discharge, total forfeitures, reduction to the lowest enlisted paygrade, and confinement for life) did not change, while Appellant argues that the convening authority's action had the effect of determining that the members sentenced Appellant to only two years of confinement for indecent acts and forcible sodomy upon a child. Although the remaining offenses are serious, and the members may have adjudged significant punishment up to that originally adjudged, we do not believe that the convening authority could determine, with any degree of certainty, that the members would have adjudged a sentence of 20 years confinement for the remaining charges and specifications. Additionally, we do not believe that we can independently reassess the sentence with any greater degree of certainty.

It is possible that if the convening authority reassessed the sentence again in a very

---

[3] *See United States v. Eversole,* 53 M.J. 132 (C.A.A.F. 2000) (Army Court of Criminal Appeals set aside aggravated assault finding and reduced confinement from six months to three months for remaining offenses of bigamy, adultery, and obstructing justice; Court of Appeals for the Armed Forces held that the Army Court abused its discretion and remanded for further proceedings); *United States v. Harris*, 53 M.J. 86 (C.A.A.F. 2000) (convening authority reassessed sentence from five years confinement and dishonorable discharge to 10 months confinement and bad conduct discharge for dereliction of duty and adultery after Army Court of Criminal Appeals set aside guilty findings of maltreatment and rape; Court of Appeals for the Armed Forces found that it was not possible to ascertain that the sentence would have been no greater than that reassessed by the convening authority).

conservative manner—meaning a very substantial reduction in the sentence—we might be able to conclude on further review that such a sentence was no greater than the sentence that would have been adjudged absent any error. However, such a sentence could result in a windfall for the Appellant. On the other hand, a less radical reassessment of the sentence could leave us again with doubts as to whether Appellant had been placed in the same position he would have been in if the error had not occurred. Thus, in this case, neither justice nor judicial economy would be well served by allowing the convening authority to reassess Appellant's sentence a second time. Therefore, we return the record to the convening authority for a rehearing on sentence. However, in the interests of judicial economy, we will address the remaining allegations of error.

II. Admission of Ex-Wife's Testimony.

In a motion *in limine*, the defense sought to exclude testimony by Appellant's ex-wife, Lynette, that Appellant claimed he was "sensitive" to physical contact when she confronted him after he became visibly aroused while playing with young children on two separate occasions while they were married. Trial defense counsel asserted that Lynette's proposed testimony was privileged as a confidential communication under Military Rule of Evidence (MRE) 504(b). In a separate motion *in limine*, the government sought to introduce Lynette's testimony under MRE 404(b) as evidence of Appellant's sexual intent. After conducting a hearing, the military judge ruled in the government's favor, and allowed Lynette to testify during the government's case in rebuttal about her observations and Appellant's explanation. Appellant now claims that the military judge erred by admitting Lynette's testimony because it was both privileged under MRE 504 and unfairly prejudicial under MRE 403. This Court has previously held that it may review a trial court's decision to admit evidence *de novo*. *See, e.g., United States v. Olean*, 56 M.J. 594, 599 (C.G.Ct.Crim.App. 2001).

a. Confidential Communication under MRE 504(b). MRE 504 has not changed since the Military Rules of Evidence were first promulgated in 1980 as an amendment to the Manual for Courts-Martial (1969 ed.) (MCM). Under MRE 504(b), a private communication between spouses during a marriage is privileged, and the privilege may be asserted even after the marriage ends. For the privilege to apply, three conditions must be met: there must be (1) a communication, (2) intended to be confidential, (3) between married persons not separated at the time of the communication. *United States v. Peterson*, 48 M.J. 81, 82 (C.A.A.F. 1998). Whether a conversation is privileged is a mixed question of law and fact. *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997). The proponent of the confidential communication privilege has the burden of persuading the military judge that a communication is privileged. *United States v. McCollum*, 56 M.J. 837, 842 (A.F.Ct.Crim.App. 2002).[4] We hold, as a preliminary matter, that Appellant's response when confronted satisfied the above conditions and is a "communication" within the meaning of MRE 504. However, we also hold that Lynette's testimony concerning her observations of Appellant's physical reaction did not involve a "communication," and is

---

[4] In *McCollum*, the Air Force Court of Criminal Appeals affirmed the military judge's determination that an accused's communication to his spouse concerning an act of child molestation was not intended to be confidential and therefore was not within the scope of MRE 504(b). The Court of Appeals for the Armed Forces granted review on that issue. *United States v. McCollum*, 57 M.J. 153 (C.A.A.F. 2002). Subsequently, the Court of Appeals for the Armed Forces directed Appellant's counsel to file an additional brief on whether the victim of the offense (the wife's 14-year old mentally retarded sister who was temporarily residing in the home) was the accused's *de facto* child for purposes of MRE 504(b). *United States v. McCollum*, 57 M.J. 488 (C.A.A.F. 2002).

therefore outside the scope of the privilege.

MRE 504(c)(2) provides three exceptions, two of which are potentially applicable in the present case. Under MRE 504(c)(2)(B), the privilege does not apply when the marriage is a sham. The military judge, as a primary basis for his ruling admitting Lynette's testimony, found that the marriage was a sham, entered into to provide care for Lynette's and Rosemary's children.[5] However, he made no findings of fact to support his ruling. There was conflicting testimony over the Appellant's and Lynnette's motives for the marriage. Lynnette testified that she and Appellant had dated once prior to their marriage; Appellant testified that they had dated for approximately one month. Appellant testified that he loved her, while Lynnette testified that it was a marriage of convenience although she "fought" to preserve the marriage after Appellant filed for divorce. Appellant also testified that the marriage had been consummated, but Lynnette testified that it had not. Additionally, Appellant could not recall the specific date of his marriage to Lynette.

The validity of a marriage is ordinarily a question of fact to be decided in accordance with state law. *United States v. Phillips*, 52 M.J. 268, 272 (C.A.A.F. 2000); *United States v. Allen*, 27 M.J. 234, 239 (C.M.A. 1988). State law is not determinative if a service member enters into a sham marriage to fraudulently obtain government benefits or to commit immigration fraud. *See Lutwak v. United States*, 344 U.S. 604, 611 (1953); *United States v. Bolden*, 28 M.J. 127, 130 (C.M.A. 1989); *United States v. Chasteen*, 19 M.J. 580 (A.F.C.M.R. 1983). We note that the government did not charge Appellant with fraudulently receiving government benefits, and, unlike many cases involving fraudulent receipt of government benefits, Appellant and Lynette inhabited the same house throughout their admittedly short marriage. Therefore, we look to state law to determine the validity of the marriage for purposes of MRE 504. However, Appellant's and Lynette's testimony concerning their relationship was inconsistent and Appellant presented no evidence of the applicable state law of the situs of the marriage or of the divorce.[6] Therefore, we are not persuaded that Appellant carried his burden of showing that the marriage was valid and not a sham so that his communication to Lynette was privileged under MRE 504(b). Moreover, even if we assume error in the finding that the marriage was a sham, we find, for the reasons discussed below, that any error was harmless.

Under MRE 504(c)(2)(A), the confidential marital communication privilege does not apply for proceedings in which a spouse is charged with a crime against the other spouse or a child of either spouse. As an alternative basis for his ruling, the military judge also found that N.

---

[5] As Judge Effron noted in his dissent in *United States v. Phillips*, "In an era of two-career relationships, the timing of marriage and the nature of marital living arrangements may be heavily influenced by such unromantic factors as tax laws, occupational benefits, and professional opportunities." *United State v. Phillip, 52* M.J. 268, 273 (C.A.A.F. 2000) (Effron J., dissenting). Similarly, we believe that desire to care for children may form a valid "unromantic" motive for a legitimate marriage. Appellant was not charged with any offenses involving Lynette's or Rosemary's children, so there is no basis to conclude that Appellant entered into a "sham" marriage to perpetrate child sexual abuse.

[6] It appears from the record that Appellant and Lynette lived in California throughout their marriage. We note that California courts look to the parties' intent at the time of the marriage to determine its validity. *See Carter v. Carter*, 13 Cal. Rptr. 922, 925 (1st. Dist 1961) (subsequent failure to live together as man and wife or consummate did not automatically render marriage invalid, but required consent did not exist and marriage was void if, at time of the marriage, one of the partners had no intent to consummate the marriage).

was a child of Appellant and Lynette within the meaning of MRE 504(c)(2)(A). The applicability of MRE 504(c)(2)(A) to such an "after-acquired" step-child when the child was not a child of either spouse at the time of the communication appears to be a case of first impression. First, we note that N. was neither Lynette's child nor Appellant's child at the time of the communication, even though she subsequently became the stepchild of both when Appellant married Susan following his divorce from Lynette and Lynette married Petty Officer H. following his divorce from Susan. At the time of the communication, Appellant and Lynette had no parental or guardianship relationship with N. She was simply a neighbor and friend of Lynette's niece who occasionally stayed overnight, and was not Appellant's "de facto" child at the time of the communication. *See United States v. McCarty*, 45 M.J. 334, 336 (C.A.A.F. 1996)(Sullivan, J., concurring). Therefore, we find that the exception under MRE 504(c)(2)(A) for a crime against spouse or child does not apply, and the military judge erred when he ruled that MRE 504(c)(2)(A) provided a basis for rejecting Appellant's claim of privilege at trial.

Error, if any, in rejecting the marital communication privilege would be nonconstitutional error. The test for nonconstitutional harmless error is "whether the error itself had substantial influence" on the findings. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). As previously discussed, the only "communication" within the meaning of MRE 504 was Appellant's somewhat exculpatory explanation that he was "sensitive" to physical contact, and not Lynette's observation that he became sexually aroused while playing with children. We believe that, even if it were error, the military judge's denial of the privilege did not substantially influence the findings and would therefore be harmless.

b. Unfair Prejudice under MRE 403. At trial, Appellant's defense theory was that the bathing-related activity was innocent and that N. fabricated the remaining allegations. In rebuttal, the government offered Lynette's testimony that Appellant became aroused while playing with children, including N., as evidence of Appellant's sexual intent.[7] To be relevant, evidence must "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. MRE 404(b) allows for the introduction of evidence of "other crimes, wrongs, or acts" as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. However, MRE 403 provides for the exclusion of relevant evidence if the danger of unfair prejudice substantially outweighs its probative value. In *United States v. Reynolds*, the Court of Military Appeals combined these rules into a three-part test:

1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?

2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?

3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice?"

---

[7] The government did not allege that Appellant's "play" with the children constituted indecent acts or was otherwise improper. Therefore, we do not consider its admissibility under MRE 414.

*United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989) (cites omitted).

The military judge, in his ruling, found that Lynette's testimony satisfied each of these requirements. We find that the military judge did not abuse his discretion in allowing the testimony. First, Lynette's testimony was direct evidence of Appellant's reaction while in close physical contact with the victim from which the members could reasonably conclude that those acts occurred. Second, Appellant's sexual intent was directly at issue, and the members could reasonably consider his prior sexual arousal with the same victim, even though distant in time and under otherwise innocent circumstances, as evidence of sexual intent. Finally, we believe the military judge could reasonably conclude that the legitimate probative value of this evidence substantially outweighed its danger of unfair prejudice. Additionally, we note that the military judge instructed the members that they could consider Lynette's testimony only for the limited purpose of showing Appellant's intent and not as evidence that he had criminal tendencies.

III.  Trial Counsel's Comment on Witness Testimony

We reject Appellant's third assignment of error (failure to grant a mistrial due to improper argument). During his closing argument, trial counsel characterized the testimony of two government experts. He said that the experts testified that the victim's experience and testimony were consistent with other child abuse victims, and that there was no indication of a psychological condition that indicated suggestibility or fabrication. Trial defense counsel objected, and moved for a mistrial at the end of trial counsel's closing remarks. The military judge, without specifically ruling on the propriety of trial counsel's comments, denied the defense motion. The military judge reminded the members that counsels' arguments were not evidence, and that they should not determine witness credibility based on expert testimony. The defense counsel did not ask the military judge for additional instructions.

The law is well settled that declaration of a mistrial is a drastic remedy, and should be used only to avoid manifest injustice (*see, e.g.*, *United States v. Rushatz*, 31 M.J. 450, 456 (C.M.A. 1990) and *United States v. Dancy*, 38 M.J. 1, 6 (C.M.A. 1993)). A military judge's failure to grant a mistrial is reviewed for abuse of discretion. *United States v. Rosser*, 6 M.J. 267, 270-71 (C.M.A. 1979).

The law is similarly well settled that an expert may not testify regarding the credibility or believability of a victim, or "opine as to the guilt or innocence of an accused." *United States v. Suarez*, 35 M.J. 374, 376 (C.M.A. 1992). *See also United States v. Cacy*, 43 M.J. 214, 217 (C.A.A.F. 1995). As the then-Court of Military Appeals stated in *United States v. Cameron*, "To allow an 'expert' to offer his opinion on the resolution of a credibility dispute goes too far, and it makes no difference whether the opinion is express or follows inferentially from the expert's diagnosis of a psychological condition suffered by the witness whose credibility is at issue. The court members must decide whether a witness is telling the truth. Expert insights into human nature are permissible, but lie detector evidence--whether human or mechanical--is not." *United States v. Cameron*, 21 M.J. 59, 64-65 (C.M.A. 1985) (cites omitted).

However, certain types of expert testimony are admissible. "An expert may testify as to what symptoms are found among children who have suffered sexual abuse and whether the

child-witness has exhibited these symptoms; discuss patterns of consistency in the stories of victims and compare those patterns with patterns in the victim's story; and testify about a child's ability to separate truth from fantasy." *United States v. Cacy*, 43 M.J. at 217. Trial practitioners "must walk a fine line" between permissible and impermissible testimony and comment upon that testimony. *Id.* at 217 (*quoting United States v. Marrie*, 39 M.J. 993, 999 (A.F.C.M.R. 1994) *aff'd* 43 M.J. 35 (C.A.A.F. 1995)). Although trial counsel's argument approached that "fine line," we find that he did not cross it and made a fair comment on admissible testimony. The military judge properly reminded the members of their role in determining witness credibility. Therefore, a mistrial was not warranted and there was no error.

IV and V. Member *Voir Dire* and Unlawful Command Influence.

Approximately three months prior to the trial and six weeks before the court-martial was convened in the present case, the Staff Judge Advocate for the Eighth Coast Guard District sent an e-mail to all commands within the Eighth District and members of the Eighth District staff.[8] In the e-mail, the SJA quoted the summary of facts from *United States v. Thrower*, 53 M.J. 705 (C.G.Ct.Crim.App. 2000), which this Court decided a week earlier. In *Thrower*, a Coast Guard petty officer was found guilty of two specifications of indecent acts involving a fellow Coast Guardsman's 10-year old daughter. The SJA e-mail indicated that it was sent "to let people know that, even among our Coast Guard ranks, we have people who hurt children." She said that recipients were free to further distribute the e-mail, "though I'm trying to contribute to a climate of caution rather than one of paranoia." She also said, "It is also, perhaps, worth considering what you should do if you receive a report of such misconduct." Suggested actions included contacting the Coast Guard Investigative Service, contacting the local work-life staff for counseling assistance, and contacting the servicing legal office for advice on administrative and disciplinary options.

In an Article 39(a) session immediately after findings were announced, the trial defense counsel moved to impeach the findings under RCM 923 on the basis of unlawful command influence. She informed the military judge that, earlier that day, she received a copy of the e-mail from the SJA. She claimed that at least one member of the panel was likely to have received this e-mail directly from the SJA. Defense counsel conceded that the e-mail was about a different case involving similar offenses, was not specifically directed to the members, and did not suggest any particular punishment, but claimed that there was a "logical connection" between the e-mail and unlawful command influence. When pressed further by the military judge, trial defense counsel claimed that, had she known about the e-mail earlier, she would have questioned the members about it during *voir dire* and "might have elicited some information as to bias and we might have exercised a challenge on [sic] cause or even a peremptory challenge." However, beyond that speculation about what further *voir dire* "might" have revealed, trial defense counsel did not cite the e-mail as grounds to challenge any member for cause pursuant to RCM 912(f)(2)(B). Although the military judge did not make any specific findings of fact, he cited the general nature of the e-mail message, extensive *voir dire* earlier in the trial, and his instructions that the members only consider evidence presented during the trial in ruling that the defense

---

[8] The SJA's e-mail dated July 6, 2000 with a subject line of "Good Order and Discipline," was addressed to D8All_COs and D8Branch_Chiefs, with copies to D8All_Airsta_XOs, D8All_Deputy_GroupCommanders, D8Cutter_XOs, D8dcs, and several individual members of the Eighth District staff.

failed to raise the issue of unlawful command influence. Appellant now claims that the trial judge erred.

In *United States v. Biagase*, the Court of Appeals for the Armed Forces held that, to raise the issue of unlawful command influence, an accused must show facts which, if true, constitute unlawful command influence and a "logical connection" between those facts and unfairness in the proceedings at the pending court-martial. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). Although the threshold is low, the defense must present "some evidence" beyond "mere allegation or speculation" to raise the issue of unlawful command influence. *Biagase*, 50 M.J. at 150 (cites omitted). Similarly, "there must be more than '[command influence] in the air' to justify action by an appellate court." *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991). Once raised, the government must establish beyond a reasonable doubt that the underlying facts do not exist, the facts do not constitute unlawful command influence, or that the unlawful command influence did not prejudice the proceedings. *Biagase*, 50 M.J. at 151. Therefore, we must decide whether, by offering the SJA's e-mail, the defense presented "some evidence" so that the burden shifted to the government to disprove the existence of unlawful command influence beyond a reasonable doubt.

There is no factual dispute over the SJA's e-mail. The government did not contest that the Eighth District SJA actually sent the e-mail or claim that its contents had been altered. Additionally, Appellant has not alleged that the e-mail in any way affected the convening authority's choice of forum, intimidated any witnesses or prevented him from obtaining clemency materials, or affected post-trial processing of the case. Appellant has not claimed that the government had any legal obligation to disclose the existence of the e-mail prior to trial or that any of the members falsely responded to *voir dire* questions. Appellant claims only that one or more of the members "might" have been biased from reading the e-mail, and further *voir dire* "might" have led to additional challenges. Therefore, further evidentiary proceedings are not needed and we need only look to the contents of the e-mail itself to determine if it constitutes "some evidence" of unlawful command influence.

The e-mail contained an accurate excerpt from our opinion in *United States v. Thrower*, *supra*. Additionally, we note that, as a result of the Coast Guard's organization, the SJA served as SJA for all subordinate commanders within the Eighth District and not just as the Eighth District Commander's SJA. The e-mail was addressed to these subordinate commanders, one of whom was a member. Providing factual information on recent appellate court decisions and encouraging commands to consult their legal office if confronted with similar allegations is well within the SJA's responsibility. In the e-mail, the SJA did not exhort the recipients to take a particular action in cases involving allegations of child sexual abuse, suggest that any particular punishment should be imposed, or represent a superior commander's opinion concerning appropriate disposition of a particular offense. The e-mail did not refer to Appellant's case or assert that that the Eighth District Commander, who subsequently convened Appellant's general court-martial, had a personal interest in cases such as Appellant's. Therefore it is easily distinguished from the communications at issue in *United States v. Stoneman*, 57 M.J. 35, 37 (C.A.A.F. 2002) (e-mail from brigade commander to subordinates in which he identified specific offenses and said he would "CRUSH" ineffective leaders) or *United States v. Martinez*, 42 M.J. 327, 329 (C.A.A.F. 1995) (wing commander's letter expressing concerns over drunk driving).

We hold that the defense failed to raise the issue of unlawful command influence.

Although challenges to court members are normally made prior to presentation of evidence, RCM 912(f)(2)(B) permits a challenge for cause to be made "at any other time during trial when it becomes apparent that a ground for challenge may exist." Clearly, this allows information obtained late in a trial to serve as grounds for a challenge for cause, although, under RCM 912(g)(2) a peremptory challenge may not be asserted after presentation of evidence has begun. Trial defense counsel did not challenge any member for cause after learning of the SJA's e-mail or specifically ask the military judge to permit additional *voir dire* on that issue. During the original *voir dire*, all of the members indicated they had not formed any opinion as to sentence and that they were not aware of any other factors that would improperly influence their deliberations. Appellant has not claimed that the members answered falsely. For the same reasons discussed above that we have determined the SJA's e-mail did not raise the issue of unlawful command influence, we also hold that it was not, by itself, an apparent ground for a challenge for cause. Therefore, the military judge did not err by failing to re-open *voir dire sua sponte.*

Conclusion

We have reviewed the record in accordance with Article 66, UCMJ and have determined that the findings as approved below are correct in law and fact, and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty are affirmed. The sentence is set aside and a rehearing on sentence is authorized. Upon completion of final action by the convening authority, whether or not a rehearing is held, the record of trial will be returned to this Court for further review pursuant to *Boudreaux v. United States Navy-Marine Corps Court of Military Review*, 28 M.J. 181 (C.M.A. 1989).

Chief Judge BAUM and Judge BRUCE concur.



For the Court,

Roy Shannon, Jr
Clerk of the Court